**In re Wayne J. KLEIN, Debtor.**

**No. 90 C 2199, 86 B 19937.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 20, 1990.
Opinion on Motion to Reconsider
Aug. 29, 1990.

Lawrence R. Moelmann, Stephen R. Swofford, Hinshaw, Culbertson, Moelmann

Hoban & Fuller, Chicago, Ill., for appellant, cross-appellee, U.S. Fidelity & Guar. Co.

Norman B. Newman, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for appellee and cross-appellant Ilene F. Goldstein, as Trustee.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

On February 22, 1990, the United States Bankruptcy Court for the Northern District of Illinois ruled that United States Fidelity & Guaranty Company ("USF & G"), the largest unsecured creditor of debtor Wayne J. Klein, could not vote for the permanent trustee in a Chapter 7 proceeding. *In re Wayne Klein*, 110 B.R. 862 (Bankr.N.D.Ill.1990). The bankruptcy court held that USF & G had materially adverse interests to the general unsecured creditors under § 702(a) of the bankruptcy code, 11 U.S.C. § 702(a) ("section 702(a)"). USF & G appeals the bankruptcy court's decision pursuant to 28 U.S.C. § 158(a).[1]

Appellee Ilene Goldstein, trustee of the Klein estate, opposed USF & G's right to vote. Goldstein cross-appeals two bankruptcy court rulings. She contends (1) that the bankruptcy court should not have permitted USF & G's lead counsel, Lawrence Moelmann, to testify at trial, and (2) the bankruptcy court erroneously concluded that USF & G's claim was fixed and liquidated under section 702(a).

On appeal, the bankruptcy court's findings of fact shall not be set aside unless they are clearly erroneous; due regard must be given to the bankruptcy judge's opportunity to evaluate the credibility of the witnesses. 11 U.S.C.Bankruptcy Rule 8013. The bankruptcy court's conclusions of law receive *de novo* review. *In re Sanabria*, 52 B.R. 75 (Bankr.N.D.Ill.1985).

### I. Background

On December 19, 1986, USF & G, Harris Trust and Saving Bank ("Harris Bank") and Continental Bank filed a petition for involuntary bankruptcy against Wayne Klein. Each had litigation pending in the Circuit Court of Cook County involving Klein. Ilene Goldstein accepted appointment as interim trustee on January 2, 1987. At the first creditors meeting, none of the creditors requested a trustee election, and Goldstein became the permanent Chapter 7 trustee. On May 29, 1987, the proceeding was converted to a Chapter 11 voluntary bankruptcy on USF & G's motion. The bankruptcy court again appointed Goldstein Chapter 11 trustee. *Klein*, 110 B.R. at 867.

USF & G moved to convert the proceeding back to Chapter 7 because Klein allegedly was not proceeding in good faith under Chapter 11. The bankruptcy court denied the motion. On appeal, this court reversed the bankruptcy court and ordered conversion back to Chapter 7. *In re Klein*, 100 B.R. 1004 (N.D.Ill.1989) (Shadur, J.). Goldstein was reappointed interim Chapter 7 trustee. The bankruptcy court scheduled a creditors meeting on July 26, 1989. One day before the meeting, USF & G filed a proof of claim for payments USF & G made on surety bonds guaranteed by the debtor. At the meeting, USF & G requested a trustee election.

USF & G asserts a claim in excess of $30,000,000 against Klein's estate. USF & G's claim exceeded the total of all other claims, enabling USF & G to control the trustee election. Goldstein objected to USF & G's right to vote because it did not hold an undisputed liquidated claim and because USF & G held an interest materially adverse to the creditors of the estate. Joining in Goldstein's objections were William Brandt, former counsel for Klein; Ernest Summers III, counsel for Chadwell & Kayser, Ltd., former counsel for the trust-

---

**1.** Section 158(a) provides,

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

ee; and John Messina, counsel for Frederick Quinn. Harris Bank indicated support for Goldstein's position and effectively joined with the trustee in her objection. Goldstein also objected to Harris Bank's and Continental Bank's right to vote.

USF & G nominated Stanley Obuchowski for trustee. Harris Bank nominated Goldstein. USF & G voted its $30 million claim, electing Obuchowski. USF & G was the only creditor that voted for Obuchowski. All other voting creditors, representing $6.6 million in claims, selected Goldstein. USF & G filed a motion to confirm Obuchowski's election. Goldstein, Harris Bank, and Quinn objected. USF & G also filed a "statement of position" intended to remedy its alleged adverse interest. After a three week trial, the bankruptcy court ruled USF & G demonstrated a pattern of conduct that was materially adverse to the interests of the general unsecured creditor class. *Klein*, 110 B.R. at 883. The bankruptcy court disqualified USF & G from voting. Since no new trustee was elected, Goldstein became the permanent trustee under bankruptcy code section 702(d), 11 U.S.C. § 702(d).

## II. USF & G's Alleged Adverse Material Interests

Section 702(a) provides,

A creditor may vote for a candidate for trustee only if such creditor—

> \* \* \* \* \* \*
>
> (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution;

The bankruptcy court identified transactions demonstrating USF & G's materially adverse interest under section 702(a). The transactions fall under four separate headings: (1) the Harris Bank preference action (2) the Stanton and Anderson settlements, (3) USF & G's prospective RICO claims and (4) the Klein residence. USF & G contends that the bankruptcy court misconstrued section 702(a) and that the court's findings respecting each of these transactions are erroneous.

## A. "Materially Adverse Interests" under Section 702(a)

The bankruptcy court summarized the legislative history of section 702(a), reviewed the applicable case law and described the standard of material adversity. The Legislative History, in Senate Report No. 95–989, states the following: "Only a creditor ... that does not have an interest materially adverse to the interest of general unsecured creditors ... may vote for a trustee.... The application of the standard requires a balancing of various factors, such as the nature of the adversity. A creditor with a very small equity position would not be excluded from voting solely because he holds a small equity in the debtor." S.Rep. No. 95–989, 95th Cong., 2d Sess. 92, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6053.

Thus, both the language of the Code as well as the Legislative History highlight the requirement of adversity to "creditors entitled to ... distribution" or, as the Legislative History puts it, "general unsecured creditors", rather than material adversity to any individual creditor.

> \* \* \* \* \* \*

The cases thus make clear that material adversity is measured by the effect on the creditor body as a whole, particularly by whether the challenged creditor's interest is such that it would tend to minimize distributions to the other creditors from the estate. Since merely opposing the claim of a single other creditor would not have the effect of minimizing distributions from the estate as a whole, it can fairly be concluded that such an interest does not qualify as materially adverse. Further, claims between creditors do not reduce the size of the estate and, therefore, also do not reduce the amount available for distribution to other creditors. Such claims are not materially adverse for purposes of § 702.

However, a demonstrated pattern of activity, which effectively does, or tends to, reduce recoveries by the estate, whereby a creditor pursues its own separate recoveries in competition with the

estate, falls into the classic pattern of material adversity. This is the same pattern of adversity demonstrated by secured parties, priority claimants, and equity holders, all of whom invariably find the pursuit of their best interests to be at odds with the interests of the general unsecured creditors of the estate by removing assets from the pool. The Code therefore denies them the right to vote for the trustee, the representative of the general unsecured creditors, under § 702(a)(2).

*Klein,* 110 B.R. at 874–77. The relevant time to measure a creditor's adverse interest is the date of the election. *Id.*

USF & G contends that the bankruptcy court misinterpreted section 702(a). USF & G asserts the general rule that Chapter 7 permits the unsecured creditors to elect a trustee to ensure that a Chapter 7 case remains a creditor controlled proceeding. Appellant's Memorandum at 25, citing *In re Poage,* 92 B.R. 659, 662 (Bankr.N.D.Tex. 1988). In *Poage,* the bankruptcy court acknowledged a strong policy of creditor control causing all doubts to be resolved in favor of the claimant. 92 B.R. at 665. The court confirmed the trustee's election over the interim trustee's objection that a major creditor, Merrill Lynch, had a materially adverse interest. The court held the interim trustee failed to establish that Merrill Lynch could enhance its recovery at the estate's expense. *Id.* at 666.

■ The bankruptcy court's interpretation of section 702(a) is consistent with *Poage.* At the time of the election, a creditor having the prospective ability to enhance its recovery at the estate's expense holds a materially adverse interest to the estate. Thus, transactions completed prior to the election are not relevant. Only if USF & G could enhance its own recovery at the estate's expense, at the time of the election, could USF & G be denied the right to vote for the trustee.

### B. Evidence of USF & G's Material Adverse Interest

#### 1. The Harris Bank Preference Action

The trustee of the Klein Construction Company ("Klein Construction") estate filed a preference claim against Harris Bank to recover $700,000 that Klein Construction paid to Harris Bank. The payment allegedly was for a debt Wayne J. Klein owed Harris Bank. The loan was secured by assets in Klein's estate. Harris Bank claimed a lien on the Klein estate for the $700,000 loan. Goldstein attempted to set aside the lien claim, arguing that Harris Bank had been repaid.

■ USF & G is a creditor of the Klein Construction estate. USF & G supported the Klein Construction trustee's attempt to recover the $700,000 preference. If Klein Construction succeeded, the Klein estate would lose $700,000 that could be liquidated and distributed to the unsecured creditors. The bankruptcy court correctly concluded that USF & G's interest was adverse to the general unsecured creditors who desired to retain the $700,000 in the Klein estate. USF & G responds that Goldstein reached a tentative settlement with the Klein Construction trustee prior to the election. Under the proposed settlement, the Klein estate and the Klein Construction estate would equally divide assets recovered from Harris Bank. After a final settlement, USF & G would be unable to enhance its recovery from the preference action at the Klein estate's expense. Since the settlement was not final, the bankruptcy court correctly concluded that the Harris Bank preference action was slight evidence of USF & G's materially adverse interest. The Harris Bank preference action is insufficient standing alone to justify divesting USF & G of its right to vote.

#### 2. The Stanton and Anderson Settlements

In February 1989, the trustee filed an application to settle a controversy with Patrick Stanton. USF & G pursued an independent claim against Stanton. USF & G stated that if Stanton did not sign an independent settlement agreement with USF & G, USF & G would object to the trustee's settlement. Based on testimony of Stanton's attorney, the bankruptcy court con-

cluded that the estate would have recovered a larger settlement if USF & G had not advanced an independent claim. USF & G argues the finding is clearly erroneous. However, the finding was supported by testimony. The bankruptcy judge had the opportunity to evaluate the credibility of the witnesses. The bankruptcy court's finding is not clearly erroneous.

Similarly, in July 1989, USF & G objected to Goldstein's proposed settlement with Brian Anderson. After a lengthy hearing, the bankruptcy court rejected the settlement. USF & G subsequently persuaded Anderson to settle separately with USF & G, increasing Anderson's settlement cost. The bankruptcy court found that Anderson would have paid more to the estate if USF & G had not intervened. USF & G maintains that the estate received the settlement amount originally proposed, and USF & G's separate agreement had no impact on the estate. However, the bankruptcy court found that Anderson would have used funds recovered by USF & G to pay the expenses and development costs of an enterprise called Chicago Ridge. The Klein estate shared in Chicago Ridge profits; reduced profits affected the estate's recovery.

The bankruptcy court determined that the Stanton and Anderson settlements reflected USF & G's material adversity. USF & G contests the court's conclusion, arguing that neither Goldstein nor the other creditors objected to USF & G's settlements before the bankruptcy court. Their failure to object is irrelevant. If USF & G was within its rights when it secured independent settlement agreements, a trustee's objection would serve only to increase the estate's legal expenses. The bankruptcy court determined that USF & G reduced the estate's recovery when it pursued independent settlements.

■ The bankruptcy court erroneously determined that the Stanton and Anderson settlements were evidence of USF & G's materially adverse interest. Only a creditor with the prospective ability to reduce

the estate's recovery has an adverse interest. The Stanton and Anderson settlements are not relevant because the settlements were completed before the election.

### 3. USF & G's Prospective Independent Claims [2]

The bankruptcy court concluded that USF & G's independent RICO claims against Klein's former associates constituted a materially adverse interest. In a related matter, the parties attempted to allocate proceeds from the conflicting RICO claims and all adversary proceedings by means of settlement. The bankruptcy court concluded that the settlement negotiations also reflected USF & G's materially adverse interest.

#### a. USF & G's Independent RICO Claims

USF & G claims a separate and independent RICO cause of action against defendants in the Klein estate's adversary proceedings ("the adversary defendants"). Goldstein, along with the Klein Construction trustee, Harris and the FDIC filed a declaratory judgment action seeking a finding that USF & G did not have standing to assert its RICO claims. The action was voluntarily dismissed in late 1988. USF & G has not filed its alleged RICO claims. However, the bankruptcy court found that USF & G's prospective RICO claims brought settlement negotiations with the adversary defendants to a halt. The adversary defendants refused to settle with the trustee unless USF & G released its claims against them. The bankruptcy court concluded that USF & G increased the estate's costs, thereby decreasing the dividend to be paid to unsecured creditors. The bankruptcy court found these claims constituted a materially adverse interest.

In addition, the adversary defendants have limited funds. USF & G Mem. at 18. USF & G's recovery from the adversary defendants draws directly from a source of funds insufficient to satisfy both USF & G's claims and the estate's claims. Since

2. The bankruptcy court discussed USF & G's unresolved claims and negotiations to resolve these claims under the headings "Rico" and "Rico/Adversary Settlements."

USF & G has an incentive to recover from the adversary defendants directly rather than receive a diluted share of the adversary defendants' assets from the estate, USF & G has an interest adverse to the estate. The bankruptcy court observed,

> Here, by means of the RICO cause of action, which USF & G most assuredly believes it has separate and apart from the Klein estate, USF & G is competing in a real and demonstratively dollars and cents fashion, with the Klein estate for recovery, regardless of theory, from the same limited fund, the defendants. Therefore, the required adversity exists to a material extent.

*Klein*, 110 B.R. at 882.

USF & G argues that the bankruptcy court may order that USF & G's RICO claims belong to the estate, citing *Barnett v. Stern*, 93 B.R. 962 (N.D.Ill.1988) *rev'd*, 909 F.2d 973 (7th Cir.1990). USF & G asserts that it is legally impossible for USF & G to increase its recovery at the expense of the estate. Essentially, USF & G argues that the bankruptcy court may require USF & G to contribute RICO settlement payments to the estate. Goldstein responds that USF & G has in fact recovered on its alleged RICO claims, but USF & G has failed to contribute its recovery to the estate. USF & G has not offered to share any of its recoveries with other creditors.

b. *USF & G's Statement Of Position*

Shortly before trial, USF & G filed a "statement of position." USF & G stated that in the event Obuchowski were confirmed, USF & G would share all future RICO recoveries with all unsecured creditors. The bankruptcy court was unmoved by USF & G's statement.

> This Statement thus actually militates *against* USF & G's position that (1) it has always been willing to share with other creditors because it relates only to future recoveries and (2) that it maintains no interest adverse to the trustee because it is conditional on USF & G getting its way on the trustee election.

*Klein*, 110 B.R. at 883. The bankruptcy court correctly observed that USF & G's statement of position is self-serving. However, the statement does reflect a binding compromise. In the statement, USF & G concedes its prospective RICO recoveries to be shared with the unsecured creditors on a *pro rata* basis. The statement reflects USF & G's decision to forego its adverse interest in favor of its right to elect the trustee.

 Ordinarily, a Chapter 7 bankruptcy is a creditor controlled proceeding, and the creditors elect a trustee. *In re Poage*, 92 B.R. at 662. Section 702(a) disenfranchises creditors only when they have a materially adverse interest. If a creditor agrees to forego its adverse interest, the trustee and the court should be receptive. USF & G filed the statement of position on November 7, 1989, prior to trial. The statement had the potential to minimize the dispute between the trustee and USF & G, thereby expediting the bankruptcy proceedings and saving the time and expense of trial, post-trial motions and appeal. Ostensibly, USF & G's concession also maximizes the recovery of the estate, since the trustee maintains that USF & G's prospective RICO claims detract from recovery by the estate. The bankruptcy court should have given the statement of position greater weight. USF & G's statement of position eliminates USF & G's adverse interest regarding prospective RICO settlements.

c. *Global Settlement Negotiations*

In late 1988, Goldstein, Continental Bank, Harris Bank, the Klein Construction trustee and USF & G attempted to negotiate a global settlement of all RICO claims and adversary proceedings against Klein's former associates. The bankruptcy court viewed the negotiations as evidence that USF & G was anxious to retain its RICO recovery. The proposed settlement entrusted the estates' RICO claims and the adversary proceedings to USF & G. Initially, the parties proposed that proceeds from any RICO recovery would be paid to USF & G, and USF & G would share those proceeds with the other unsecured creditors.

The parties never reached an agreement. USF & G asserts the last written proposal was circulated by Goldstein's attorney in a letter dated August 8, 1989. USF & G's attorney, Lawrence Moelmann, allegedly responded that USF & G was willing to enter the proposed agreement except for one provision that unconditionally required USF & G to pursue the RICO claims and the adversaries even if USF & G preferred to abandon those claims. Under the proposed agreement, the Klein and Klein Construction estates would assign their RICO claims to USF & G, and USF & G would pursue those claims on behalf of both estates, as well as Harris Bank, Continental Bank and USF & G. USF & G would also pursue certain adversaries on behalf of the Klein estate and the Klein Construction estate. USF & G would pay all litigation expenses, subject to reimbursement only in the event of recovery. USF & G would return assets recovered from adversary defendants to the Klein estate. RICO recoveries would be distributed as follows: 20% to the Klein estate, 20% to the Klein Construction estate and 60% to USF & G ("the 60–20–20 formula"). The amount paid to USF & G would be distributed *pro rata* to Harris Bank and Continental Bank. In addition, if the other parties favored a settlement that USF & G opposed, USF & G would be permitted to litigate the claims, provided that USF & G guaranteed the estates and the other creditors the amount they would have received had the settlement been accepted.

Moelmann testified that settlement negotiations broke down because Harris Bank insisted upon settlement of certain adversary proceedings involving Harris Bank as a prerequisite for entering the global settlement agreement. Goldstein offers a different account, one that was adopted by the bankruptcy court. Goldstein recounts that USF & G demanded that proceeds from Klein estate property be shared pursuant to the 60–20–20 formula. Tr. at 344–48 and 1023–1025. The record substantially supports the bankruptcy court's findings of fact, precluding an alternative finding by this court.

In the end, the Klein estate declined to enter a global settlement agreement. The question remains whether the negotiations, and the contending RICO claims, establish that USF & G had a materially adverse interest to the unsecured creditors. Regarding the negotiations, the bankruptcy court concluded,

> Had Goldstein adopted USF & G's position, it would have cost the Klein estate the full value of property of the estate. USF & G would have received 60% of the recovery without fully compensating the Klein estate for the property interests given up.

*Klein*, 110 B.R. at 879. The negotiations sought an agreement that would saddle USF & G with the entire litigation burden of both the Klein estate and the Klein Construction estate. Ostensibly, USF & G also sacrificed some interest in its own RICO claims. In exchange, USF & G negotiated to obtain a larger share of the recovered proceeds. The negotiations placed USF & G in an adverse posture. The parties negotiated at arm's length to divide the litigation costs and spoils. Any creditor that offered to litigate all the Klein estate's claims would necessarily negotiate against the estate for remuneration. However, the negotiations ended prior to the trustee election. Once the negotiations ended, the adverse interest created by the negotiations also ended.

 USF & G's prospective adversary claims against Klein's former associates do not constitute a materially adverse interest, nor do the aborted negotiations for a global settlement. Thus, the bankruptcy court erred in precluding USF & G from voting in the trustee election based on these considerations.

### 4. The Klein Residence

The last remaining transaction considered by the bankruptcy court involves the Klein residence. The bankruptcy court summarized the dispute as follows:

> On June 1, 1988, USF & G obtained a judgment in the sum of $5,315,897.10 against Donna Jean Klein ("Ms. Klein") in a case captioned *United States Fideli-*

*ty and Guarantee Company v. Klein Corporation, et al*, 86 CH 10115. The Trustee filed an adversary proceeding against Ms. Klein (87 A 0571) to recover, as a fraudulent conveyance, the property known as 637 Berkshire Court, Downers Grove, Illinois. Tr. at pg. 354.

USF & G attempted to intervene in the adversary proceeding on June 5, 1988. Tr. at pg. 355. On February 21, 1989, USF & G withdrew its motion to intervene. Tr. at pg. 355. USF & G has since taken the position that the transfers of this property should only be set aside to the extent that title is returned to Ms. Klein, rather than to the debtor, who transferred his interest in the property to Ms. Klein shortly before she transferred her interest to a third party. Tr. at pg. 354–356. USF & G has maintained this position at all relevant times. Tr. at pg. 355–356.

*Klein*, 110 B.R. at 879. USF & G also contends that the Klein residence is worthless to the estate because Ms. Klein has no equity. As easily deduced from the heated dispute between USF & G and the Klein estate over the residence, the parties believe that the residence is worth retrieving. If Goldstein successfully sets aside prior transfers and encumbrances on the property, the property would have substantial equity.

In its statement of position, USF & G agrees to defer any claim it might have to recover against the Klein residence pursuant to its judgment against Donna Klein in favor of the trustee's claims against such property. Nothing in the record suggests that Obuchowski, as trustee, would not fulfill his fiduciary duty to the creditors in attempting to obtain the Klein residence. As discussed above, USF & G's statement of position should be considered where it eliminates any material adverse interest. In this case, the statement eliminates USF & G's adverse interest regarding the Klein

estate. Accordingly, the bankruptcy court erred in refusing to accept USF & G's statement of position and in not permitting USF & G to vote in the trustee election.

## III. Goldstein's Cross–Appeal

In her cross-appeal, Goldstein contends (1) that the bankruptcy court should not have permitted USF & G's lead counsel, Lawrence Moelmann ("Moelmann"), to testify at trial, and (2) the bankruptcy court erroneously concluded that USF & G's claim was fixed and liquidated under section 702(a).

### A. Moelmann's Testimony

██ Goldstein asserts that the bankruptcy court should not have permitted Moelmann to testify at trial while acting as USF & G's counsel, citing the Illinois Code of Professional Responsibility, Rule 5–102, Ill. Ann.Stat. ch. 110A, following ¶ 774 (Smith–Hurd).[3] Goldstein requests the court to strike Moelmann's testimony. Ordinarily, a lawyer may not act both as counsel and as a witness in a trial, but a trial court has broad discretion in determining whether an attorney should be disqualified. *Lanigan v. LaSalle Nat'l Bank*, 609 F.Supp. 1000, 1001 (N.D.Ill.1985).

██ Goldstein asserts that she suffered prejudice as a result of Moelmann's dual role at trial. She recites the common reasons that attorneys are not permitted to testify on their clients' behalf. She argues that it appears improper for an attorney to testify. She contends the attorney might vouch for his own credibility and unduly prejudice the trier of fact. These factors are less significant in a bench trial. Nothing in the record suggests that the bankruptcy judge was unduly swayed by Moelmann's testimony. Indeed, the bankruptcy judge's rulings were substantially adverse to Moelmann's client. Goldstein further maintains that her cross-examination was

---

**3.** Rule 5–102 provides:
(a) If a lawyer learns after undertaking employment in contemplated or pending litigation, or if it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and neither he nor his firm, if any, shall continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in Rule 5–101(b)(1) through (4).

hampered by Moelmann's repeated invocation of the attorney-client privilege. USF & G would have retained its attorney-client privilege even if Moelmann had not appeared as trial counsel.

Given the long history of these bankruptcy proceedings and Moelmann's familiarity with them, and the fact the trial was before a judge rather than a jury, the bankruptcy judge did not abuse his discretion in permitting Moelmann to act as counsel. *See United States v. Morris,* 714 F.2d 669, 672 (7th Cir.1983) (a judge is unlikely to be confused by an attorney's dual appearance as advocate and witness in a suppression hearing). Even if technically Moelmann should not have been permitted to act as counsel, he remained a competent witness. Goldstein's request to strike his testimony is unwarranted considering that Goldstein has shown absolutely no prejudice resulting from the bankruptcy court's decision. The bankruptcy judge did not abuse his discretion in allowing Moelmann to testify.

### B. The Amount Of USF & G's Claim

Goldstein contends that the bankruptcy court erred in finding that USF & G filed a *prima facie* valid proof of claim. Goldstein further argues that the bankruptcy court mistakenly viewed USF & G's claim as 29 separate claims in determining that the claim was fixed and liquidated for voting purposes.

#### 1. The Adequacy of USF & G's Proof of Claim

■ A Chapter 7 creditor is entitled to vote for a trustee if the creditor files a proof of claim prior to the creditors meeting. Bankruptcy Rule 2003(b)(3).

> In a chapter 7 liquidation case, a creditor is entitled to vote at a meeting if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face.... Notwithstanding objection to the amount or allowability of a claim for the purpose of voting, the court may, after such notice and hearing as it may

direct, temporarily allow it for that purpose in an amount that seems proper to the court.

*Id.* Bankruptcy Code § 702(a) provides,

> A creditor may vote for a candidate for trustee only if such creditor—
>
> (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

Goldstein asserts that the proof of claim must establish the fixed, liquidated amount of the creditor's claim.

Rule 2003(b)(3) requires either (1) a proof of claim or (2) a writing setting forth facts evidencing a right to vote under § 702(a). USF & G submitted a proof of claim. Bankruptcy Rule 3001(a) defines a proof of claim:

> A proof of claim is a written statement setting forth a creditor's claim.

Rule 3001(c) provides,

> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim.

USF & G's proof of claim stated that USF & G's claim was based upon the master surety agreement, attached to the proof of claim. In the master surety agreement, Klein agreed to indemnify USF & G for any losses that USF & G sustained executing bonds on behalf of Klein Construction Company, Klein Corporation or Condor Construction Company. USF & G attached a substantial number of bonds issued pursuant to the master surety agreement. USF & G also attached a computerized printout of USF & G payments on the bonds. USF & G's proof of claim identifies vouchers totalling $30,578,362.82 that USF & G issued pursuant to the master surety agreement. The proof of claim states that the vouchers representing each payment were too voluminous to attach, but USF & G offered to make the vouchers available to any party upon request. USF & G's proof of claim conformed with the official form. *Klein,* 110 B.R. at 869. USF & G's proof of claim was a written statement

setting forth its claim satisfying the requirements of Rule 3001(a).

■ Goldstein contends that USF & G's proof of claim is insufficient on its face because USF & G failed to attach copies of the vouchers, nullifying the proof of claim. Goldstein relies heavily upon three cases, *In re Lindell Drop Forge Co.*, 111 B.R. 137 (Bankr.W.D.Mich.1990), *In re All American Auxiliary Assn.*, 95 B.R. 540 (Bankr.S.D.Ohio 1989) and *In re Marino*, 90 B.R. 25 (Bankr.D.Conn.1988). In *Marino*, a creditor relied on schedules allegedly appended to a lease to support its claim. The lease did not contain the schedules, and the court observed that the creditor could not establish that the schedules ever existed. 90 B.R. at 28. In *All American*, a creditor was an insider. The insider-claimant failed to show that his claims were reasonable, necessary and in pursuit of the debtor's business. Neither *Marino* nor *All American* bears upon USF & G's decision not to attach each individual voucher to establish its claim. In both *Marino* and *All American*, the proof of claim was held invalid because the creditor could not substantiate its claim. In *Lindell*, the claim involved an estimation of employee benefits owed by the debtor. The court held the proof of claim offered no basis to determine how the claim was estimated. 111 B.R. at 142. In contrast, USF & G's claim is based upon the master surety agreement and payments made by USF & G. USF & G summarized those payments and established a reasonable basis for its claim. In addition, the vouchers were available upon request by any party. The bankruptcy court's decision that the proof of claim was *prima facie* valid was correct and shall not be overturned.

### 2. The Liquidated Claim Requirement

Goldstein objected to USF & G's right to vote. Rule 2003(b)(3) provides,

> Notwithstanding objection to the amount or allowability of a claim for the purpose of voting, the court may, after such notice and hearing as it may direct, temporarily allow it for that purpose in an amount that seems proper to the court.

Rule 2003 permits the court to temporarily allow a claim after (1) an objection and (2) notice and a hearing. Both preconditions occurred in this case. *Klein*, 110 B.R. at 874. Rule 2003(b)(3) permits a court to determine the proper claim amount. USF & G's claim consists of 29 separate transactions. *Klein*, 110 B.R. at 872. The bankruptcy court concluded that, at a minimum, transactions amounting to approximately $10,000,000 constituted liquidated obligations of the Klein estate. *Id.* at 873. The remaining transactions arguably constituted unliquidated claims because USF & G could potentially recover from third parties. The $10,000,000 liquidated portion of USF & G's claim is sufficient to control the trustee election.

■ Goldstein argues that section 702(a) precludes USF & G from voting for a trustee unless its entire claim is liquidated. Under Goldstein's interpretation, if USF & G had $29,000,000 in liquidated, undisputed claims and only $1,000,000 in unliquidated claims, USF & G would not be entitled to vote. Goldstein asserts that section 702(a) conflicts with rule 2003. If the rule is in conflict with the statute, the statute controls and the rule must be disregarded. *See* 1 L.King, *Collier on Bankruptcy*, ¶ 3.04(2)(C) (1980) (procedural rules must be consistent with the bankruptcy statute).

Section 702(a) is silent regarding whether a creditor's claim may consist of multiple claims, some liquidated and some unliquidated. Under section 702(a)(1), a creditor with "an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution" is entitled to vote. Section 702(a) does not expressly prevent a creditor from asserting the liquidated portion of its claim.

Section 702(a) allows USF & G to vote only the portion of its claim that may be determined with mathematical certainty. Rule 2003(b)(3) permits the bankruptcy court to determine the amount of USF & G's claim that satisfies section 702(a). The bankruptcy court correctly determined that USF & G's $10,000,000 liquidated claim satisfied section 702(a).

Lastly, Goldstein asserts that a technical quirk in rule 2003 prohibits the bankruptcy court from reviewing USF & G's proof of claim. Goldstein relies on the advisory note to Rule 2003:

> If it is necessary for the court to make a determination with respect to a claim, the [creditors] meeting may be adjourned until the objection or dispute is resolved.

After the contested election of Obuchowski, the creditors meeting was concluded rather than merely adjourned. Goldstein argues that failure to adjourn the meeting precludes the court from bifurcating USF & G's claim.

The phrase "may be adjourned" is permissive and does not *require* the creditors to adjourn the meeting. The bankruptcy court aptly observed,

> The Code and Rules should not lightly be read to impose requirements that smack of hypertechnicality and slavish formalism.

*Klein*, 110 B.R. at 870. The bankruptcy court properly determined USF & G's liquidated claim. USF & G has an approximately $10 million liquidated claim. USF & G's liquidated claim constitutes a majority of the vote and is sufficient to elect Obuchowski.

## IV. Conclusion

The bankruptcy court's decision is affirmed in part and reversed in part. USF & G's statement of position eliminates USF & G's material adversity to the unsecured creditors. Accordingly, the bankruptcy court erred in disenfranchising USF & G. The bankruptcy court is ordered to adopt USF & G's statement of position and confirm the election of Stanley Obuchowski as trustee.

The bankruptcy judge did not abuse his discretion in allowing USF & G's attorney to testify at trial. The bankruptcy court did not err in determining that USF & G filed a *prima facie* valid claim and that USF & G had a fixed, liquidated claim for voting purposes.

## ON MOTION TO RECONSIDER

On February 22, 1990, the United States Bankruptcy Court for the Northern District of Illinois ruled that United States Fidelity & Guaranty Company ("USF & G"), the largest unsecured creditor of debtor Wayne J. Klein, could not vote for the permanent trustee in a Chapter 7 proceeding. *In re Wayne Klein*, 110 B.R. 862 (Bankr.N.D.Ill.1990). The bankruptcy court held that USF & G had materially adverse interests to the general unsecured creditors under bankruptcy code § 702(a), 11 U.S.C. § 702(a) ("Section 702(a)"). On August 20, 1990, this court granted USF & G's appeal, finding that USF & G's statement of position eliminated its adverse interest. Memorandum Opinion and Order, August 20, 1990 ("the opinion"). Appellee Ilene Goldstein, the Klein estate's trustee, moves the court to reconsider the opinion pursuant to Fed.R.Civ.P. 59(e). In the alternative, Goldstein moves the court to stay enforcement of the court's August 20 order confirming the election of Stanley Obuchowski as trustee. The background facts and allegations are summarized in the opinion and shall not be restated.

## I. Goldstein's Motion to Reconsider

The disputed election occurred on July 26, 1989. In the opinion, the court stated that global settlement negotiations involving USF & G, the other unsecured creditors and the Klein estate ("the global negotiations") ended on approximately August 8, 1989. Opinion at 977. The court mistakenly concluded that the global negotiations ended prior to the disputed election. *Id.* at 978. The court reasoned that the global negotiations could not constitute a materially adverse interest preventing USF & G from voting for the trustee because the global negotiations ended prior to the election. *Id.* In light of this mistake, the court must reconsider whether the global negotiations preclude USF & G from voting for the trustee.

In her motion to reconsider, Goldstein reiterates that the global settlement negotiations constitute a materially adverse interest under Section 702(a). Section 702(a) provides,

A creditor may vote for a candidate for trustee only if such creditor—

\*　　\*　　\*　　\*　　\*　　\*

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution;

A creditor having the prospective ability to enhance its recovery at the estate's expense holds a materially adverse interest to the estate. Opinion at 975. Thus, transactions completed prior to the election are not relevant. Only if USF & G could enhance its own recovery at the estate's expense could USF & G be denied the right to vote for the trustee. *Id.*

The bankruptcy code and bankruptcy rules require that a trustee election must be held at the first creditors meeting. 11 U.S.C. § 341(a); Bankruptcy Rule 2003 ("Rule 2003"). The bankruptcy judge is excluded from the creditors meeting. 11 U.S.C. § 341(c). Formerly, bankruptcy judges presided over these meetings. The procedural change was intended to relieve bankruptcy judges of administrative and supervisory election duties. *See, In re Kam Kuo Seafood Corp.*, 42 B.R. 558 at 560 (Bankr.S.D.N.Y.1984).

At the first creditors meeting, the trustee or any creditor may object to another creditor's right to vote. Rule 2003(b)(3). The objection may result in a disputed election. Rule 2003(d) provides,

The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

USF & G filed a motion to confirm Stanley Obuchowski's election within 10 days of the disputed election. After a motion is made, Rule 2003(d) requires the bankruptcy court to intervene to resolve the election dispute. The hearing by the bankruptcy court is part of the election process when there is a dispute. That hearing occurred in December 1989, after USF & G's global settlement negotiations ended and USF & G no longer held an interest materially adverse to the estate. Thus, the election date is not outcome determinative here, as Goldstein suggests.

Goldstein asserts that the bankruptcy court's role under Rule 2003(d) is simply to determine whether an adverse interest existed at the time of the disputed election. In the opinion, the court recited the bankruptcy court's maxim that the adverse interest must be measured at the time of the election. Opinion at 975, citing *Klein*, 110 B.R. at 877. Since objection to a creditor's right to vote is made at the first creditor's meeting, the creditor would be unable to remedy any alleged adverse interest before the vote. The disenfranchised creditor must contest that any adverse interest exists in order to regain its right to vote. The resulting litigation disrupts administration of the estate by delaying the trustee's final confirmation until the dispute may be fully litigated. Substantial expense directly results from litigating the dispute, reducing the creditors' eventual recovery.

Strong policy reasons favor permitting a creditor to eradicate its material adverse interest prior to a hearing if the creditor desires to regain its right to vote. A Chapter 7 bankruptcy is a creditor controlled proceeding. *In re Poage*, 92 B.R. 659, 662 (Bankr.N.D.Tex.1988). Accordingly, any creditor without an adverse interest should be entitled to vote. Further, the estate benefits by resolving the dispute prior to engaging in litigation. First, the estate saves litigation expenses. Second, the estate gains when a creditor sacrifices its adverse interest to the estate.

Permitting a creditor to eradicate its adverse interest after the creditors meeting could dissuade a trustee from objecting to

a creditor's adverse interest. A creditor like USF & G might convince the trustee not to object by threatening to relinquish its adverse interest and vote the trustee out of office. The trustee might lose her job because she determined to fight the majority creditor in order to protect the estate. Of course, a majority creditor might as easily promise to vote for the trustee if the trustee ignores the adverse interest. However, a trustee may be expected to repel these pressures. In addition, any creditor may object to another creditor's right to vote. Rule 2003(b)(3). In this case, USF & G was prepared to remove Goldstein in favor of Obuchowski prior to the creditors meeting. Goldstein had an incentive to wait until the creditors meeting before objecting to USF & G's adverse interest, even though the estate benefits when that interest is eliminated. The estate's recovery is maximized when the trustee objects to a creditor with an adverse interest and when she permits the creditor to eliminate its adverse interest in order to regain its right to vote.

■ Goldstein contends that the bankruptcy code and rules plainly prohibit a creditor from remedying its adverse interest. However, the bankruptcy court may take practical measures to resolve election disputes. *See, In re Nat'l Sugar Refining Co.*, 39 B.R. 578 (Bankr.S.D.N.Y.1984) (declaring election of compromise candidate chosen by the majority of the creditors after a disputed election). Bankruptcy Rule 2003(d) requires a court to resolve an election dispute. The parameters for resolving the dispute are undefined. Accordingly, the court should adopt the approach that maximizes the estate's recovery and that comports with the Chapter 7 policy of creditor control. On November 7, 1989, USF & G filed a statement of position eliminating its adverse interest respecting its independent RICO claims and the Klein residence. Global negotiations involving USF & G and other creditors ended on approximately August 8, 1989. The negotiations did not result in any loss to the estate. Thus, prior to the bankruptcy court's December 1989 hearing, USF & G eradicated its adverse interest without causing any loss to the estate. In resolving the election dispute, the bankruptcy court should have acknowledged both the statement of position and the termination of the negotiations.

Goldstein asserts that this solution effectively nullifies Section 702(a)(2). On the contrary, by eliminating its adverse interest, USF & G satisfied the Section 702(a) voting requirements. Goldstein argues that USF & G has wasted the Klein estate's funds. Absent an adverse interest, USF & G has no incentive to waste the estate's funds because USF & G's claim constitutes a substantial portion of the unsecured claims. Goldstein offers no explanation why USF & G would waste the estate's funds. In this litigation, USF & G bears its own expenses and shares the estate's expenses. USF & G measured the benefits of regaining its right to vote against the costs of litigating this dispute, and apparently USF & G treasured its right to vote for a new trustee.

Accordingly, Goldstein's motion to reconsider is denied.

## II. Goldstein's Motion to Stay the Court's Order

■ Pursuant to Rule 8017(b), Goldstein moves the court to stay the August 20 order requiring the bankruptcy court to adopt USF & G's statement of position and confirm the election of Stanley Obuchowski as trustee. Rule 8017(b), entitled "Stay of Judgment of District Court or Bankruptcy Appellate Panel," provides in pertinent part:

On motion and notice to the parties to the appeal, the district court or the bankruptcy appellate panel may stay its judgment pending an appeal to the court of appeals. The stay shall not extend beyond 30 days after the entry of the judgment of the district court or the bankruptcy appellate panel unless the period is extended for cause shown. If before the expiration of a stay entered pursuant to this subdivision there is an appeal to the court of appeals by the party who obtained the stay, the stay shall continue

until final disposition by the court of appeals.

Goldstein asserts that the trustee and the Klein estate will suffer irreparable harm if the order is not stayed. Goldstein states,

> Ms. Goldstein has been the Trustee in this case for over 3 years, 2 and one half years of which preceded the election. This bankruptcy case consists of over 10 fraudulent conveyance actions, all of which are interrelated and in which the majority of defendants have asserted their 5th amendment right against self-incrimination. The debtor has also asserted his 5th amendment rights and therefore is not available to testify to any of the facts which underlie these causes of action. Debtor failed to file complete and accurate Schedules and Statement of Affairs and all of the adversary actions were developed from records discovered by Ms. Goldstein and through meetings by Ms. Goldstein with persons knowledgeable of the debtor's affairs.

Goldstein Memorandum at 5–6. Goldstein asserts that seven of the adversary proceedings are scheduled for trial before the bankruptcy judge within the next 45 days. Goldstein is scheduled to appear as a witness in a number of these proceedings. In short, Goldstein asserts that the expertise she acquired as interim trustee and during the dispute over the trustee election requires the court allow her to continue as trustee until the court's order may be appealed.

Trustee elections may disrupt the estate's administration. *See In re Sandhurst Securities, Inc.,* 96 B.R. 451, 457 (Bankr.S.D.N.Y.1989). USF & G asserts that as the largest unsecured creditor, USF & G will bear a large share of costs associated with the transition. USF & G asserts that Goldstein refuses to file RICO claims on the estate's behalf, and these RICO claims may expire under pertinent statutes of limitations unless the new trustee administers the estate. USF & G also disputes Goldstein's position regarding settlement negotiations. Finally, USF & G invokes its right to vote.

The court is mindful that if its decision is reversed on appeal, the estate will bear the costs of a second transition between Obuchowski and Goldstein. In the interest of minimizing disruption to the estate, the court grants Goldstein's motion to stay the court's order. The order shall be stayed pursuant to Rule 8017(b) for thirty days.

III. Conclusion

Goldstein's motion to reconsider is denied. Goldstein's motion to stay the judgment is granted. The court's order dated August 20, 1990 is stayed for thirty days.