**In re CENTENNIAL TEXTILES, INC., and Dynasty Prints, Inc., Debtors.**

Bankruptcy Nos. 96 B 46472 (BRL), 96 B 46473 (BRL).

United States Bankruptcy Court, S.D. New York.

May 29, 1997.

Andrew Pincus, Pick & Halperin, L.L.P., New York City, for Official Committee of

Unsecured Creditors, Bank of New York, Heller Financial, and Reeves Brothers.

Hal M. Hirsch, Purchase, NY, Interim Trustee.

Brian S. Masumoto, New York City, Assistant U.S. Trustee.

MEMORANDUM DECISION AND ORDER DETERMINING CREDITORS' AND CREDITORS' COMMITTEE'S APPLICATION TO RESOLVE CHAPTER 7 TRUSTEE ELECTION CONTROVERSY

BURTON R. LIFLAND, Bankruptcy Judge.

At the 341 meeting following the conversion of these jointly-administered (but not substantively consolidated) cases from Chapter 11 to Chapter 7, the Unsecured Creditors' Committee (the "Committee"), together with three creditors, Reeves Brothers ("Reeves"), Heller Financial ("Heller"), and Bank of New York ("BNY"), requested the election of a Chapter 7 trustee. These creditors voted their claims for Robert M. Fisher ("Fisher"). Due to questions concerning the qualifications of these creditors to vote, the United States Trustee was unable to certify the election, and filed a *Report of Election Controversy* pursuant to Fed. R. Bankr.P. ("FRBP") 2003(d). The Committee, Reeves, Heller, and BNY timely requested this Court's determination of the election controversy pursuant to FRBP 2003(d).

Under section 702 of the Bankruptcy Code (the "Code") in order for a creditor's request for an election to qualify to meet the 20% threshold of claims requesting an election, and in order for that creditor's vote to be counted in such election, a creditor must hold "an allowable, undisputed, fixed, liquidated, unsecured claim." In addition, the creditor must not hold an interest materially adverse to creditors entitled to distribution from the estate, and may not be an insider.

The U.S. Trustee reported that because various claims may be considered unliquidated or disputed, or because creditors may hold interests materially adverse to the interests

of other creditors, it was unable to certify the election in these cases.

## CENTENNIAL ELECTION

### Reeves Brothers Claim

The Reeves claim was filed against Centennial only. Prior to the 341 meeting and election, the Interim Trustee filed an adversary complaint against Reeves alleging receipt of preferential transfers. Reeves' answer denies that the alleged transfers were preferential within the meaning of 11 U.S.C. section 547, and raises various affirmative defenses. In determining whether the allegedly preferential transfer renders Reeves' claim disputed for the purposes of section 702, the court should only look at the contested claim to ascertain whether there are genuine issues of law or fact. If so, the claim is disputed, and cannot be included within the 20% threshold of claims requesting an election, and cannot be counted in such election. *See In re Lough,* 57 B.R. 993 (Bankr. E.D.Mich.1986).

■ Further, it must appear that the dispute is grounded on more than a mere suspicion. "The cases which have addressed the issue as to whether a creditor who has received a preference, for instance 'generally assume that such creditor's interest will be materially adverse to other creditors, provided that the claim of preference is based on more than mere suspicion.'" *In re New York Produce American & Korean Auction Corp.,* 106 B.R. 42, 47 (Bankr.S.D.N.Y.1989) (quoting *In re NNLC Corp.,* 96 B.R. 7, 10 (Bankr.D.Conn.1989)). The claim of a creditor who has received a preference is subject to disallowance under section 502(d), unless that creditor returns the preferential transfer. A claim subject to disallowance is therefore not an "allowable" claim under section 702(a). In addition, a creditor who has received a preference has been held to have an interest "materially adverse to the interests of other creditors whose claims are entitled to participate in any distribution from the bankruptcy estate." *In re Lang Cartage Corp.,* 20 B.R. 534, 536 (Bankr.D.Wis.1982).

■ It appears from a review of the complaint and answer that the Interim Trustee's allegations that Reeves received a preference is based on more than mere suspicion. It may be that Reeves has valid defenses to the preference action, but that is not to be determined in the context of resolving an election controversy. *See Lough, supra.* For the purposes of qualifying the 20% threshold of claims which must request the election of a trustee, and for counting such claims in the trustee election, Reeves' claim is both "materially adverse" and not "allowable" within the meaning of section 702(a), and cannot be counted.

■ The *Application in Support of Motion for Order Resolving Election Controversy in Favor of Appointment of Robert M. Fisher as Chapter 7 Trustee* (the "Creditors' Application") filed by the Committee and the creditors states that under FRBP 2003(b)(3), "even if a claim is disputed, and indeed, even if an objection to a claim has been filed, this Court has the authority to make a provisional allowance of a claim for voting purposes." *See* Creditors' Application, paras. 23, 34. Counsel for these creditors has apparently not read the rule to which he cites in the last six years. This provision of Rule 2003(b)(3) was deleted in the 1991 amendments to the Rules. In *In re San Diego Symphony Orchestra Assoc.,* 201 B.R. 978 (Bankr.S.D.Cal. 1996), Judge Bowie noted that section 702 of the Code

> does not authorize temporary allowance of otherwise disputed claims.... [T]o the extent that the prior version of Rule 2003(b) actually granted authority to temporarily allow claims (as distinct from appearing to do so in derogation of the controlling statute), that authority was withdrawn by amendment. Accordingly, and in light of the express language of section 702(a), the Court has no authority to temporarily allow otherwise disputed claims for voting purposes.

*Id.,* at 981.

In its *Reply in Further Support of Order Resolving Election Controversy in Favor of the Appointment of Robert M. Fisher as Chapter 7 Trustee* (the "Creditors' Reply"), the attorneys for the Committee and the creditors again

urge[ ] this Court to provisionally allow Reeves' claim for voting purposes in an amount less the dollar amount asserted in the preference action as suggested by the Court in *In re Metro Shippers, Inc.,* 63 B.R. 593 (Bankr.E.D.Pa.1986); *see also In re Klein,* 110 B.R. 862, 876 (Bankr.N.D.Ill. 1990); *aff'd in part, rev'd in part,* 119 B.R. 971 (N.D.Ill.1990) *appeal den.* [sic] 940 F.2d 1075 (7th Cir.1991)(referring to process utilized by the Court in *Metro Shippers* to eliminate the adversity).

Creditors' Reply, at 7. Surprisingly, the attorneys refer to cases decided under the former version of FRBP 2003(b), *entirely without acknowledging the deletion of the language in Rule 2003(b) which purportedly authorized the courts to estimate such claims for voting purposes,* even though the attorneys presumably read the Interim Trustee's Report and the cases cited therein. In the absence of such authority, and particularly in view of the deletion of that portion of FRBP 2003(b), this Court will not estimate creditors' claims for the purposes of qualifying a request for a trustee election or for counting such votes in any election.

*Heller Financial Claim*

■ Heller Financial filed claims against both debtors. The U.S. Trustee's Report states that Steven J. Brown, Vice President of Heller Financial, attended the 341 meeting on behalf of Heller. At the 341 meeting, Brown stated that of the total Heller claim of $3,690,005.30 asserted against Centennial, $3,410,138.02 was unsecured and $279,867.28 was secured, of which $228,438.75 was in dispute. The U.S. Trustee's Report states that counsel to the Debtors and the Interim Trustee alleged that there was a dispute of approximately $600,000 regarding the Heller claim. However, as of the date of the 341 meeting, no objection to the claim had been filed, either by the Debtors during the Chapter 11 phase, or by the Interim Trustee following the conversion. An unsupported allegation of a dispute regarding a claim is insufficient to disqualify a creditor's claim for qualifying a request for an election, or for voting. *See In re DB Drilling, Inc.,* 73 B.R. 953, 955–956 (Bankr.N.D.Tex.1987). Similarly, the Debtors' and Interim Trustee's

unsubstantiated allegations of a dispute with regard to the Heller claim are insufficient, in themselves, to disqualify Heller from qualifying or voting.

■ However, the $228,438.75 which the U.S. Trustee's report indicates as being in dispute arises from an adversary proceeding which was filed by the Chapter 11 debtor-in-possession against Sykel, Inc. ("Sykel") and Duro Finishing ("Duro"). The basis for the alleged dispute is Centennial's sale of goods to Sykel which were held by Duro. The receivable in favor of Centennial arising out of this transaction was factored by Heller. Duro refused to release the goods to Sykel, asserting a spinner's lien. Sykel thereafter refused to pay Heller on the invoices assigned to Heller from Centennial. Heller did not indicate whether it waived any right under the factoring arrangement to charge back any uncollected receivable. Whether this makes the Heller claim "disputed" as between Heller and Centennial within the meaning of section 702 is immaterial; it is clear that Heller's claim is unliquidated while the adversary proceeding is pending, absent an unequivocal statement by Heller that its claim against the debtor cannot and will not change as a consequence of any inability to collect on any receivable of Centennial, which had not been given as of the time of the election.

■ A debt is liquidated within the meaning of section 702 if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable by reference to (1) an agreement or (2) a simple formula. *See In re Potenza,* 75 B.R. 17, 19 (Bankr. D.Nev.1987); *In re Poage,* 92 B.R. 659, 665 (Bankr.N.D.Tex.1988). The existence of the dispute between the Debtor, Duro, Sykel, and Heller renders Heller's unsecured claim incapable of being ascertainable under this standard, and thus unliquidated for purposes of section 702.

■ Moreover, Heller's claim is apparently subject to cross-guarantees in both cases. The existence of secured cross-guarantees on debts owed by two debtors to one creditor in jointly-administered cases which have not been substantively consolidated ren-

ders the claims in both cases unliquidated in both cases. To the extent Heller is able or unable to realize the collateral on its secured claim in either case, its claim against the estate in the other case will decrease or increase. Accordingly, Heller's claim is unliquidated due to these secured cross-guarantees. The claims against two related debtors in jointly-administered but not substantively consolidated cases based on secured cross-guarantees distinguishes this case from *In re Poage, supra.* There, the claim of a creditor voting for a permanent trustee was objected to because the creditor had recourse to a non-debtor, which was alleged to render the claim unliquidated. The court held that the claim was not unliquidated "since the promissory note provides that [the debtor's husband] is jointly and severally liable for full payment." 92 B.R. at 665. Here, however, the creditor's resort is not to non-debtors, but to separate debtors' estates being jointly administered.

Finally, Heller's claim is an undersecured claim. An undersecured claim is bifurcated into secured and unsecured portions under section 506(a). Where the holder of an undersecured claim attempts to vote the unsecured portion of its claim in a trustee election, a dispute is probable. First, it is difficult to value the collateral to determine the secured portion of the claim. Second, it may be that the unsecured portion of the claim is not "fixed" within the meaning of section 702(a)(1). *See In re Michelex Ltd.,* 195 B.R. 993, 1007 (Bankr.W.D.Mich.1996); *In re NNLC Corp.,* at 9. Most importantly, the interests of the undersecured creditor may be materially adverse to unsecured creditors. *See Michelex,* at 1007, *San Diego Symphony,* at 984, and *cf. In re New York Produce American & Korean Auction Corp.,* 106 B.R. 42, 45 (Bankr.S.D.N.Y.1989) (substantial issues of material fact existed as to whether claims of creditors who asserted that they wished to preserve trust beneficiary rights under Perishable Agricultural Commodities Act were subject to dispute; court could not resolve issues in context of summary judgment motion).

A letter from Scott R. Yablonowitz, Deputy General Counsel and Assistant Secretary of Heller to the attorneys for the Interim Trustee, states that "Heller does claim a security interest in all of the Debtors' accounts receivable pursuant to the security interest granted in the Factoring Agreements." As this letter, *written after the election,* makes clear, Heller's interest is in maximizing the collateral that can be applied to the secured portion of its claim, not in maximizing the recovery for the unsecured creditors of the estate.

As Heller's claim is both unliquidated and materially adverse to the unsecured creditors of this estate, the claim cannot be included to qualify the 20% threshold of unsecured creditors requesting an election, or be counted in such election.

*Bank of New York Claim*

 The BNY claim is also an undersecured claim. Identical proofs of claim were filed by BNY against both debtors on April 16, 1997, the day of the 341 meeting and election. Both claims indicate that the claims are unsecured; however, the U.S. Trustee's Report states that Roy Walsh, a Vice–President of BNY Financial Corp. attended the 341 meeting and stated that of the total amount asserted against both debtors, $667,000 was secured. The U.S. Trustee's Report also notes that Mr. Walsh stated that he could not allocate the secured amounts between the two debtors. As noted above, an undersecured claim against a debtor represents an interest materially adverse to the unsecured creditors of that debtor's estate.

Moreover, BNY's claim is apparently subject to cross-guarantees in both cases. As discussed above, the existence of secured cross-guarantees renders the claims in both cases unliquidated in both cases. Moreover, because BNY filed its claim as an unsecured claim, and did not provide any evidence of security, the Court cannot determine to what extent, at the Lime of the election, the secured portion of BNY's claim represented an interest adverse to the unsecured creditors.

As BNY's claim is both unliquidated and materially adverse to the unsecured creditors of this estate, and because it cannot be determined from BNY's proof of claim what portion of its claim is unsecured, the claim can-

not be included to qualify the 20% threshold of unsecured creditors requesting an election, or be counted in such election.

### DYNASTY ELECTION

#### Bank of New York Claim

As noted above, BNY's apparently undersecured claim is unliquidated, and represents an interest materially adverse to other creditors of the debtor, as BNY could not allocate the secured portion of the claim between the two debtors, and its proof of claim does not set forth to what extent, if any, the claim may be secured. The claim of BNY cannot be counted either to qualify the 20% threshold seeking an election, or voting in such election.

#### Heller Claim

As set forth above, Heller's claim is unliquidated, and is materially adverse to unsecured creditors. In addition, the existence of the secured cross-guarantees renders the claim unliquidated, and thus ineligible to qualify the request for an election or to be counted in such voting.

Therefore, the requests for election of a trustee in both cases were not made by eligible creditors holding 20% of eligible claims, nor were the claims of creditors voting for Mr. Fisher eligible to be counted. Accordingly, pursuant to the provisions of section 702, the Interim Trustee shall succeed as permanent trustee in both cases. IT IS SO ORDERED.