**In re PL LIQUIDATION CORP.,
f/k/a Plassein International
Corp., et al.,[1] Debtors.**

**No. 03–11489 JBR.**

United States Bankruptcy Court,
D. Delaware.

Feb. 4, 2004.

---

1. The Debtors in the separate but jointly administered cases are: Plassein International Corp. (Case No. 03–11489 or the "Main Case") ("Plassein") and all of its wholly-owned domestic subsidiaries: Plassein International of Martin, Inc. (Case. No. 03–11491) ("Martin"); Plassein International of Ontario, LLC (Case No. 03–11492) ("Ontario"); Plassein International of Salem, Inc. (Case No. 03–11493) ("Salem"); Plassein International of Spartanburg, Inc. (Case. No. 03–11494) ("Spartanburg"); Plassein International of Thomasville, Inc. (Case No. 03–11495) ("Thomasville"); and Teno Films, Incorporated (Case No. 03–11496) ("Teno" and, collectively, the "Debtors").

Adam G. Landis, Kerri K. Mumford, Landis Rath & Cobb LLP, Wilmington, DE, for Debtor.

Jeoffrey L. Burtch, Cooch and Taylor, Daniel B. Butz, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Trustees.

Charles R. Bennett, Jr., Hanfiy & King, P.C., Boston, MA, David B. Stratton, Henry Jon DeWerth–Jaffe, Pepper Hamilton LLP, William R. Firth, III, Wilmington, DE, for Creditor Committee.

## MEMORANDUM OF DECISION ON MOTION BY REQUESTING CREDITORS FOR RESOLUTION OF DISPUTED ELECTION AND FOR A DETERMINATION THAT WILLIAM BRANDT BE APPOINTED AS PERMANENT TRUSTEE OF EACH OF THE ABOVE ESTATES

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court for hearing on the Motion by Requesting Creditors for Resolution of Disputed Election and for a Determination That William Brandt Be Appointed as Permanent Trustee of Each of the Above Estates [Docket No. 865] (the "Motion"); the United States Trustee's Report of Disputed Election of Chapter 7 Trustee [Docket No. 855] (the "UST's Report"); the Objection of Fleet Capital Corporation to Motion of Requesting Creditors for Resolution of Disputed Election and for a Determination That William Brandt Be Appointed as Permanent Trustee of Each of the Above Estates [Docket No. 891] (the "Fleet Objection"); and The Interim Trustee's Response to Motion By Requesting Creditors for Resolution of Disputed Election and for a De-

termination That William Brandt Be Appointed as Permanent Trustee of Each of the Above Estates [Docket No. 893] (the "Interim Trustee's Response").

**BACKGROUND**

On May 14, 2003 (the "Petition Date") each of the Debtors filed a voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. By order dated May 16, 2003 the cases were administratively consolidated; they are not substantively consolidated. The Main Case was designated as the lead case with pleadings to be docketed therein. The dockets in each of the other cases contain the following notation: "The docket in Case No. 03–11489(LK) should be consulted for all matters affecting the above-listed cases." One notice of the first meeting of creditors, identifying all of the Debtors, was sent to all creditors. One meeting was held; one Creditors' Committee was elected. The Debtors share the same counsel.

On October 24, 2003 the cases were converted to Chapter 7 cases and the UST appointed one interim trustee, Jeoffrey L. Burtch (the "Interim Trustee"), for all the cases. The Notice to Interim Trustee/Trustee of Selection in an Asset Case [Docket No. 791] Is captioned "In the Matter of Plassein International Corp. (n/k/a/ PL Liquidation Corp.), *et al.*" The only docket number appearing on the Notice is that of the Main Case. The Notice of Mr. Burtch's appointment appears only on the Docket of the Main Case.

Subsequently the Clerk of this Court issued a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Section 341 Notice") which refers only to Plassein as the Debtor and bears only the docket number of the Main Case. It does not contain any reference to the subsidiaries' cases. The Court, through the Bankruptcy Noticing Center, mailed the Notice to 3,335 creditors and interested parties. It is essentially uncontroverted that this Notice was sent to all creditors of all of the Debtors.

On December 16, 2003 the Interim Trustee convened a first meeting of creditors and a request was made on behalf of several creditors [2] (the Requesting Creditors) that a trustee election in the jointly administered cases be held. Although there were several issues that were unresolved at the time of the meeting, an election was held and all of the Requesting Creditors voted for William Brandt, their nominee for permanent trustee. Immediately prior to the meeting the Requesting Creditors filed proofs of claims totaling $40,712,078.96. At the meeting the Interim Trustee orally objected to the inclusion of the $1,490,425.26 claim of ExxonMobil on the grounds that it received a payment from one or more of the Debtors within 90 days of the Petition Date and such payment might be preferential thereby creating an adverse interest between ExxonMobil and other unsecured creditors.

Following the voting, the parties filed the various pleadings now before the Court and identified several issues to be resolved in order to determine whether Mr. Brandt is the duly elected trustee for all of the Debtors. These issues include (1) whether, because of the captioning of the Section 341 Notice, a meeting and the election could be conducted only in the Main Case; (2) whether, even if the meeting related to all Debtors, a joint election could be held; (3) whether, if such an

---

**2.** The creditors requesting the election are Massachusetts Mutual Life Insurance Company; MassMutual Participation Investors; MassMutual Corporate Investors; Suntrust Equity Funding LLC; Peachtree Equity Partners; Caltius Mezzanine Partners d/b/a/ Libra Mezzanine Partners; Equistar Chemicals, LP; and ExxonMobil Chemical Company.

election could be held, the Requesting Creditors meet the requirements for requesting and voting in a trustee election; and (4) whether the facts of these cases require separate trustees for at least some of the Debtors.

## DISCUSSION

### 1. *The Section 341 Notice*

■ Fleet objects to the election on the grounds that the Section 341 Notice relates only to the Main Case.[3] It notes that none of the dockets of any of the subsidiaries' cases indicate a Section 341 meeting was scheduled. Therefore it apparently assumes that those creditors either got no notice or improper notice. Attached to the Fleet objection, however, is a list of creditors which Fleet represents is "a list of all creditors of all the Debtors taken from the Schedules and claims register of all of the Debtors." This list includes creditors holding claims only against a subsidiary but not Plassein. The names and addresses of those creditors appear on the Certificate of Mailing of the Section 341 Notice. All creditors of all of the Debtors were sent the Section 341 Notice.

■ Moreover, although the Notice could have been more complete by referring to each of the Debtors' cases, the reference to only the Main Case does not limit the pleading to that case. These cases are jointly administered as permitted by Fed. R. Bankr.P. 1015(b). "Joint administration as distinguished from consolidation may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other purely administrative matters that may aid in expediting the cases and rendering the process less costly." Advisory Committee Notes to Fed. R. Bankr.P. 1015. "Joint administration is provided for in Fed. R. Bankr.P. 1015(b). It is meant to aid the Court in expediting proceedings and to make the cases less costly. Generally, joint administration provides for jointly-held § 341 meetings and other consistent deadlines. Joint administration is designed for the ease of administration . . . ." *In re Cooper*, 2003 WL 1965711, *2 (Bankr.N.D.Iowa 2003). To require that a separate notice issue in each case would undermine the purpose of Rule 1015(b). Therefore the Section 341 Notice was sufficient to convene the meeting with respect to all Debtors.

---

**3.** Fleet, agent for the secured lender group, asserts that the lenders' claims are substantially undersecured. It did not seek to vote in the election. *See In re Centennial Textiles, Inc.*, 209 B.R. 31, 35 (Bankr.S.D.N.Y.1997) (undersecured creditor not entitled to vote in trustee election as "an undersecured claim against a debtor represents an interest materially adverse to the unsecured creditors of that debtor's case"). No party raised the issue of whether that disqualification divests Fleet of standing to object to the election. "Neither the Rule nor the Code state who has standing to object. The Advisory Committee Notes to Rule 2003 state that the Court will promptly resolve election disputes 'when an interested party presents the dispute to the Court.' 'Interested party' is not defined in the Code or the Rules." *In re Blesi*, 43 B.R. 45, 48 (Bankr.D.Minn.1984) (finding a debtor is interested because of his attendance at a section 341 meeting and thus has standing to challenge an election). *Compare In re Kehoe*, 221 B.R. 285, 290 (1st Cir. BAP 1998) ("[W]e do not agree that a cognizable § 702/Rule 2003 'Interest' arises by virtue of the debtor's attendance at the § 341 meeting or the debtor's familiarity with the claims of his or her creditors. After all, the debtor must attend the § 341 meeting and must provide accurate information about assets and liabilities."). The Court leaves open the question of whether interested party status is dependent upon participation or eligibility to participate in an election and will address Fleet's arguments.

■ Finally, even if the Court were to require that section 341 meetings be convened in all of the other cases, the outcome of the election, as discussed below, would not change. The Requesting Creditors overwhelmingly control the vote. The error, if there was one, is harmless. Therefore sending new notices and holding separate meetings are meaningless acts that substantially increase the costs of administration and decrease the efficiency of these cases—consequences that joint administration is designed to prevent, and yield no benefit and no different result.

## 2. Joint Election

■ Although there is little case law addressing the question of whether a joint election may be held in jointly administered cases, this Court agrees with and adopts the holdings and reasoning set forth in *In re Ben Franklin Retail Stores, Inc.*, 214 B.R. 852 (Bankr.N.D.Ill.1997), and finds that one election is permitted, and indeed preferred. As the *Ben Franklin* court noted, the election of one trustee is consistent with the purposes and goals of joint administration. Further a "natural reading" of Rule 2009(a)[4] which governs the election of a trustee in administratively consolidated cases contemplates that all creditors of the estates may vote as one creditor body in a single election and elect one trustee to oversee all of the cases. *Ben Franklin*, 214 B.R. at 858.

Fleet attempts to distinguish *Ben Franklin* by noting that there were two interim trustees appointed in those cases:

one for the holding company and one for all of the subsidiaries. That distinction is meaningless. That there were initially two interim trustees appointed did not prevent the election of a single trustee in a jointly-held election.[5] Therefore the Court finds that a single election is permissible and indeed preferred. All eligible claims held against any of the Debtors constitute the universe of claims against which the claims of the Requesting Creditors must now be compared to determine if the election was properly requested and Mr. Brandt properly elected.

## 3. The Validity of the Request for an Election and the Voting for Mr. Brandt

■ Fleet and the Interim Trustee object to a joint election for reasons that relate to the Requesting Creditors' eligibility both to request an election and to vote based upon the nature of their claims. To the extent that their objection is grounded upon their assertion that the Requesting Creditors hold only contingent, unliquidated, and disputed claims arising from guarantees against the subsidiary Debtors, that assertion, even if factually accurate,[6] has no impact on the election.

A trustee election may be requested creditors holding at least 20% in amount of claims eligible to vote for a trustee. 11 U.S.C. § 702(b). Generally creditors eligible to vote are those (1) whose claims are "allowable, undisputed, fixed, liquidated,[and] unsecured...;" (2) who do not hold materially adverse interests to other

4. Rule 2009(a) provides in pertinent part:
"[T]he creditors of the estates being jointly administered may elect a single trustee in a single election."

5. The failure of any party to object to the appointment of only one interim trustee for all of the Debtors in the present cases undercuts Fleet's argument, discussed below, that

conflicts among the estates prevent the election of a single trustee.

6. The Court does not need to address the issue of whether such claims, arising under guarantees which, on their face, impose primary obligations, are as characterized by Fleet and the Interim Trustee.

unsecured creditors; and (3) who are not insiders. 11 U.S.C. § 702(a). Rule 2003(b)(3) of the Federal Rules of Bankruptcy Procedure adds the requirement that to *qualify* to vote, a creditor must file a proof of claim or writing evidencing his claim prior to the election.

None of the Requesting Creditors are insiders. All hold allowable, undisputed, fixed, liquidated and unsecured claims against Plaissein, and all filed proofs of claim. Even if the proofs of claim are deemed to be filed only in the Main Case, a leap that ignores the fact the claims agent has kept one claims log, the Requesting Creditors, even if ExxonMobil's claim is not counted,[7] overwhelmingly control the universe of eligible claims by virtue of their claims against Plassein. Those claims, without ExxonMobil, total over $39 million. Even if the universe of claims against all Debtors is calculated to favor the objectors, namely that none of the Requesting Creditors have claims against the subsidiary estates and that all other claims in each Debtor's "subuniverse" as set forth in the UST's Report do not represent any duplication of claims or otherwise ineligible creditors, the Requesting Creditors hold far more than 20% of the claims eligible to vote. Thus there can be no doubt, they properly requested an election.

Similarly the votes of the Requesting Creditors, minus ExxonMobil, overwhelmingly control the vote and they were all cast in favor of Mr. Brandt. Thus unless there is reason to not permit Mr. Brandt to serve as trustee for all of the estates, he will be permitted to do so.[8]

#### 4. *Separate Trustees*

■ Fleet and the Interim Trustee raise the issue of potential conflicts as requiring at least some of the estates to have separate trustees. The Interim Trustee alleges a conflict between the "main estate" and Ontario based upon Ontario's intercompany payables of $12 million. It is curious that the Interim Trustee now alleges the existence of a conflict as he was appointed and has acted as an interim trustee for all of the estates. Apparently no objection was ever raised to having one committee represent the interests of all unsecured creditors when these cases were in proceedings under Chapter 11 nor did any party suggest there was a conflict that prevented the Debtors from having the same counsel. In this context, the allegation of a conflict, without more, is not sufficient. *See In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir.1991).

■ Fleet argues that Plassein acquired all of the Debtor subsidiaries, except Thomasville, in a single acquisition. It argues that the subsequent acquisition of Thomasville may give rise to a conflict. This bald assertion, however, is insufficient to sever Thomasville from its parent and sister Debtors. Fleet never raised this concern until the election and perhaps never would have had it not been for the election. It is nothing more than Fleet's attempt to deny the unsecured creditors their choice of one trustee for all.

■ Finally, to the extent that Fleet continues to press possible procedural ir-

---

7. The Court need not decide whether the Interim Trustee's statement that ExxonMobil received one or more payments within the preference period is sufficient to exclude ExxonMobil's vote. *See Centennial Textiles,* 209 B.R. at 33. ("[I]t must appear that the dis-

pute is grounded on more than mere suspicion.")

8. There has been no suggestion that Mr. Brandt has any conflict of interest which would prevent him from serving as trustee in any of the cases.

regularities, such as the alleged failure of the Requesting Creditors' attorney to file a Rule 2006(e) Statement regarding representation of multiple parties, the objection is without merit. Such technical deficiencies should not defeat the right of unsecured creditors to control their own destiny by electing a trustee of their choosing. The Court will not elevate form over substance.

## CONCLUSION

For the reasons set forth herein the Motion is ALLOWED and the Objections are OVERRULED.

A separate order confirming the election of William Brandt as the Chapter 7 Trustee of each Debtors' estate will issue.

## ORDER ON MOTION BY REQUESTING CREDITORS FOR RESOLUTION OF DISPUTED ELECTION AND FOR A DETERMINATION THAT WILLIAM BRANDT BE APPOINTED AS PERMANENT TRUSTEE OF EACH OF THE ABOVE ESTATES

For the reasons set forth in the Memorandum of Decision on Motion by Requesting Creditors for Resolution of Disputed Election and for a Determination That William Brandt Be Appointed as Permanent Trustee of Each of the Above Estates, it is hereby ORDERED:

1. That the Motion is ALLOWED;

. 2. That William Brandt be deemed to be the duly elected permanent trustee of the estates of each of the Debtors in these jointly administered cases; and

3. That the Memorandum of Decision and this Order may be docketed in Case No 03–11489 only and shall have full force and effect in all of the jointly administered cases.