A & E 128 NORTH CORPORATION
and A & E 128 South Corporation,
Debtors.

Riemer & Braunstein LLP, Appellant,

v.

Mark G. DeGiacomo, Chapter
7 Trustee, Appellee.

BAP No. MB 14–059.
Bankruptcy Nos. 13–16446–
HJB, 13–16447–HJB.

United States Bankruptcy Appellate Panel
of the First Circuit.

Signed April 2, 2015.

Paul S. Samson, Esq., on brief for Appellant.

Mark G. DeGiacomo, Esq., Keri L. Wintle, Esq., and Kevin F. Yetman, Esq., on brief for Appellee.

Before KORNREICH, TESTER, and CARY, United States Bankruptcy Appellate Panel Judges.

TESTER, Bankruptcy Judge.

Riemer & Braunstein LLP ("Riemer") appeals from the bankruptcy court's: (1) August 7, 2014 order ruling that Riemer and another creditor, Santander Bank, were not qualified to vote for a permanent chapter 7 trustee under § 702(a),[1] and appointing the interim trustee as the permanent trustee; and (2) September 4, 2014 order denying Riemer's motion for reconsideration. For the reasons set forth below, we **AFFIRM.**

## BACKGROUND

On November 3, 2013, A & E 128 North Corporation ("A & E North") and A & E 128 South Corporation ("A & E South") (collectively, the "Debtors") filed individual chapter 11 petitions, and their cases were jointly administered. Each of the Debtors operated a gas station and convenience store at highway rest areas in Massachusetts.

Both Debtors scheduled Riemer as an unsecured creditor holding an "unliquidated" claim in an "unknown" amount. They both scheduled Santander as a secured creditor holding a "contingent" and "unliquidated" claim in the amount of $385,023.30. In January 2014, A & E North amended its schedules to include a receivable due from its principal, Scott Sternburg, in the amount of $273,174.18 and to list Mr. Sternburg as a general unsecured creditor with a claim in the amount of $641,500.00. Similarly, A & E South amended its schedules to include a receivable due from Mr. Sternburg in the amount of $82,247.72 and to list Mr. Sternburg as a general unsecured creditor with a claim in the amount of $641,500.00.

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq.* All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

Santander filed identical proofs of claim in each of the Debtors' cases asserting secured claims in the amount of $385,023.30. In March 2014, the bankruptcy court approved a stipulation between the Debtors and Santander settling Santander's claims, whereby Santander was to receive a certain amount (based on a formula) from the proceeds of the sale of the Debtors' assets and was authorized to set off and apply the funds in the Debtors' pre-petition bank accounts. The stipulation also provided that any remaining portion of Santander's claims following such distributions "shall be treated as an allowed general unsecured claim against [each of] the Debtors' estates." On August 6, 2014, after the closing of the sale of the Debtors' assets, Santander filed amended proofs of claim in each of the Debtors' cases asserting unsecured claims in the amount of $178,920.51.[2]

On May 15, 2014, Riemer filed identical proofs of claim in each of the Debtors' cases asserting unsecured claims in the amount of $240,755.41 for "legal services rendered prior to petition date." As support for each proof of claim, Riemer attached an "invoice" dated May 13, 2014, addressed to both Debtors, summarizing approximately thirteen different legal services, rendered during an unspecified period of time, for a "TOTAL DUE" of $240,755.41. The invoice did not provide any itemization or apportionment regarding the amounts due to each Debtor. Also on May 15, 2014, Riemer emailed the Debtors' counsel copies of the proofs of claim, stating the claims were " 'joint and several' claims and not aggregate claims, i.e. the total claim is $240,755.41, for which they are both liable, not for $480k."

On May 28, 2014, the bankruptcy court converted both cases to chapter 7, and Mark DeGiacomo (the "Appellee") was duly appointed as the interim trustee in both cases. At the § 341 meeting of creditors on July 8, 2014, Riemer and Santander requested an election for the permanent trustee pursuant to § 702(a), and they both proposed to elect Gary W. Cruickshank. To determine their eligibility to request an election, the United States Trustee (the "UST") questioned both creditors about their claims. Santander stated it had a general unsecured claim in the amount of $179,424.00. Riemer stated it was asserting a total claim of $240,000.00, but it was not sure which of the Debtors owed what amounts on account of Riemer's pre-petition legal fees. The Appellee objected to the election based on a "personal long standing relationship" between an attorney at Riemer and Scott Sternburg, the Debtors' principal.[3]

On July 16, 2014, the UST filed a Report of Disputed Election (the "Election Report"). In the Election Report, the UST stated that "[u]ntil a judicial determination has been made regarding whether [Riemer] holds any interest materially adverse to other creditors, and whether it is therefore eligible to vote for [a] trustee, the United States Trustee cannot determine if [Riemer] is qualified to call for an election of a trustee." The UST also indicated it was unable to determine whether the 20%

---

**2.** Santander indicated that in calculating its unsecured claims, it subtracted from its original claims $167,734.14 (which it received from the proceeds of the § 363 sale of the Debtors' assets) and $38,368.65 (which it received as on offset from the Debtors' bank accounts) in accordance with the stipulation.

**3.** Specifically, the Appellee stated:

Uh, it appears that there—if there was a relationship here, personal longstanding relationship, and that the trustee is being appointed because the, um, creditors feel that the trustee—the other—new trustee will not look into causes of action against the principal and yet they feel that I would.

threshold required under § 702 had been reached "because several creditors, including unsecured creditors, have claims which have been satisfied in part since the petition date, and since the amended schedules were filed."[4] In this regard, the UST considered three different scenarios for calculating the voting thresholds, with differing results.[5] Consequently, the UST determined he was unable to certify the election due to "the lack of a clear result."

On July 30, 2014, Riemer filed a Motion for Resolution of Trustee Election Dispute, contending the UST's calculation of the universe of claims was not accurate, and the 20% voting threshold was met under all of the possible scenarios. As to its own eligibility to vote, Riemer asserted it had timely filed "joint and several proofs of claim" which, in the absence of any objections, entitled it to vote pursuant to § 502(a), and that there was no merit to the Appellee's allegations of an adverse interest due to Riemer's relationship with Mr. Sternburg. Riemer also argued the UST erred in excluding Santander from its calculations as Santander held an allowed unsecured claim after receiving distributions from the sale proceeds.

The Appellee objected, arguing: (a) Riemer had a materially adverse interest to the Debtors due to its receipt of preferential transfers; (b) the "personal relationship between Sternburg and one of [Riemer's] senior partners" suggested Riemer was materially adverse to the interest of other creditors; and (c) Riemer's proofs of claim were insufficient on their face under Bankruptcy Rule 2003(b)(3) for failure "to attach an engagement letter, itemized invoices or a statement explaining the absence of such...." As to Santander, the Appellee claimed: (a) Santander's claims were partially secured by assets of a third party ("A & E Fitchburg") "rendering Santander ineligible to vote in an election under § 702"; (b) Santander's claims were not liquidated because it held certain unliquidated collateral from A & E Fitchburg; (c) Santander's interest was materially adverse to the interests of other creditors because Santander held personal guarantees from Mr. Sternburg, who owed mon-

---

**4.** On April 2, 2014, the bankruptcy court authorized the sale of substantially all of the Debtors' assets, and the sale closed on April 17, 2014. In connection with the sale, certain claims (including Santander's) were either fully or partially satisfied.

**5.** There are a number of different methods for determining the universe of creditors entitled to vote for purposes of § 702(b), as developed by case law. Some courts apply a restrictive view, considering only the proofs of claims filed at the time of the election. See, e.g., In re Lake States Commodities, Inc., 173 B.R. 642 (Bankr.N.D.Ill.1994); In re Baton Rouge Marine Repair & Drydock, Inc., 57 B.R. 19 (Bankr.M.D.La.1985). Other courts hold that the universe of creditors must be determined by looking at the debtor's schedules. See, e.g., In re Lindell Drop Forge Co., 111 B.R. 137, 145 (Bankr.W.D.Mich.1990); In re Blanchard Mgmt. Corp., 10 B.R. 186, 189 (Bankr. S.D.N.Y.1981). And some courts apply an even more expansive view, first looking to the debtor's schedules to determine the universe of creditors and then adjusting that universe by considering proofs of claim filed at the time of the election. See, e.g., Caudill v. N.C. Mach., Inc. (In re Am. Eagle Mfg., Inc.), 231 B.R. 320, 324 n. 7 (9th Cir. BAP 1999); see also In re Petters Co., 425 B.R. 534, 553–54 (Bankr.D.Minn.2010); In re San Diego Symphony Orchestra Ass'n, 201 B.R. 978 (Bankr. S.D.Cal.1996); In re Michelex Ltd., 195 B.R. 993 (Bankr.W.D.Mich.1996). The UST considered each of these scenarios. In one of the scenarios, the UST did not include Riemer's claim amount in the universe of creditors at all, and in the other two, he divided the claim amount equally between the two Debtors. The UST did not include Santander's claims in his calculations in any of the scenarios as Santander originally filed secured proofs of claim, and had not yet filed amended proofs of claim asserting unsecured claims.

ey to the Debtors; and (d) Santander's proofs of claim were defective, its claims were not fixed and liquidated, and the stipulation did not entitle Santander to vote.

On August 7, 2014, the bankruptcy court conducted a hearing on the disputed election. At the hearing, the UST informed the court as to how he made his calculations under the three different scenarios for determining the universe of creditors, and Riemer addressed why it thought the UST had made some errors in evaluating which creditors to include in those calculations, specifically as some of the creditors' claims were fully or partially satisfied from the sale proceeds. Riemer also addressed the Appellee's argument that Riemer and Santander were not qualified to request an election, arguing, inter alia, the Appellee was required to raise all such objections at or before the election, and the Appellee could not raise new grounds for disqualifying creditors after the election. The Appellee disagreed he was limited to the grounds he raised at the § 341 meeting, and proceeded to address each of the arguments he raised in his objection to Riemer's motion for resolution.

After hearing arguments from the parties, the bankruptcy court first determined it would adopt the *American Eagle* approach, calculating the universe of creditors based on the debtor's schedules, as modified by proofs of claim on file. The court further determined, although an objection needs to be made at the time of the election, the court was not limited to the issues raised at the election and it could also "consider the state of the record and arguments made up to and including the date of the hearing."

Applying this standard, the bankruptcy court then considered whether Santander and Riemer were qualified to request an election. As to Santander, the bankruptcy court ruled Santander's interest was materially adverse to the other unsecured creditors because it had personal guarantees from Mr. Sternburg, against whom the Debtors had claims, and to the extent Mr. Sternburg could not satisfy both claims, Santander and the Debtors' estates would be competing for those assets.

As to Riemer, the bankruptcy court rejected the Appellee's argument that Riemer had a materially adverse interest to the Debtors due to its receipt of preferential transfers, noting no preference recovery from Riemer was likely. The court also determined there was not enough evidence for it to conclude Riemer had a materially adverse interest due to a personal relationship between Mr. Sternburg and one of Riemer's attorneys. The bankruptcy court concluded, however, that Riemer was disqualified from voting for the permanent trustee because its claims were not liquidated. Relying on the exchange between the UST and Riemer at the § 341 meeting regarding the nature of Riemer's claims, the court noted that if Riemer had stated the liability of each Debtor to Riemer was joint and several, the claims would have been fixed and therefore liquidated. Riemer, however, suggested the liability was not joint and several and it needed to be divided in some way. The bankruptcy court determined, therefore, as there was nothing in the record (such as invoices) which divided and apportioned the services between the two Debtors, the liability of each Debtor to Riemer was unliquidated, and because it was unliquidated, Riemer was not qualified to vote.

The court then determined that because Riemer's vote was necessary in order to satisfy any of the different scenarios suggested by the UST, a new trustee was not elected and the Appellee would serve as the permanent trustee. Thereafter, the bankruptcy court entered an order ruling:

(1) Santander was disqualified from voting for the permanent chapter 7 trustee because it had a materially adverse interest; (2) Riemer was disqualified from voting for the permanent chapter 7 trustee because its claims were unliquidated; and (3) the Appellee would be the permanent chapter 7 trustee.

Riemer moved for reconsideration, and the Appellee objected. On September 4, 2014, the bankruptcy court, without a hearing, entered an order denying the motion for reconsideration.[6] This appeal followed.

### JURISDICTION

We may consider appeals from final orders or, with leave of court, from interlocutory orders. *See* 28 U.S.C. § 158(a)(1) & (3). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Vázquez–Laboy v. Doral Mortg. Corp. (In re Vázquez–Laboy)*, 647 F.3d 367, 372 (1st Cir.2011) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). An interlocutory order "only decides some intervening matter pertaining to the cause, and . . . requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st

Cir.1985) (internal quotations and citation omitted).

 The Appellee contends we lack jurisdiction to decide this appeal because the order is interlocutory, citing *In re Klein*, 940 F.2d 1075, 1077–78 (7th Cir. 1991) (holding bankruptcy court's decision not to confirm the election of a chapter 7 trustee was interlocutory because it "did not resolve the substantive rights of the parties in any way, but merely decided one procedural question along the way."). In the First Circuit, however, orders resolving trustee appointment disputes are final, appealable orders because they conclusively determine a significant and discrete issue in the bankruptcy case. *See In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 825–26 (1st Cir.1990) (holding pre-confirmation order appointing a trustee was "a final decision of a significant and discrete dispute (i.e., a dispute over the authority and procedure for appointing a trustee)" and final for purposes of appeal). Although *In re Plaza de Diego* involved a disputed appointment of a chapter 11 trustee, the same rationale applies here. The bankruptcy court's order resolving the chapter 7 trustee election dispute conclusively determined a discrete issue in the bankruptcy case.[7] An election of the permanent chapter 7 trustee was not merely a preliminary step in a chapter

---

**6.** The order provided in its entirety as follows: Denied. The issue of Riemer & Braunstein's eligibility to vote was properly before the court. Furthermore, while the court ruled that it may consider arguments raised up to and including the date of the hearing on a disputed trustee election, the court was obligated to determine the question of whether Riemer & Braunstein's claim was actually liquidated, and thus whether Riemer & Braunstein was qualified to vote, as of the time of the election.

**7.** *See J.P. Morgan Inv. Mgmt., Inc. v. U.S. Tr. (In re Martech USA, Inc.)*, 188 B.R. 847, 850

(9th Cir. BAP 1995) (holding order resolving chapter 7 trustee election dispute should be considered final "since it conclusively determined a discrete issue") (citation omitted), *aff'd*, 90 F.3d 408 (9th Cir.1996); *Berg v. Esposito (In re Oxborrow)*, 104 B.R. 356, 359 (E.D.Wash.1989) (ruling order voiding creditors' election of permanent chapter 7 trustee and appointing interim trustees as permanent trustee was final because it "finally, distinctly, and conclusively determined a discrete issue") (citation omitted), *aff'd*, 913 F.2d 751 (9th Cir.1990).

7 case, but was fundamental to the proceeding itself as the permanent trustee will be engaged in the proceeding to its conclusion. In addition, the bankruptcy court's order conclusively determined the creditors' eligibility (or lack thereof) to elect a chapter 7 trustee to represent their interests. Although creditors do not have an automatic right to appoint a particular trustee, they do have an interest in the method by which the trustee is appointed and a right to insist the appointment be made in accordance with applicable Bankruptcy Rules. Thus, the order before us is final for purposes of appeal, and we have jurisdiction.

### STANDARD OF REVIEW

We review the bankruptcy court's conclusions of law regarding disputed trustee elections de novo, and its findings of fact for clear error. *In re Am. Eagle Mfg., Inc.*, 231 B.R. at 328 (citation omitted).

### DISCUSSION

## I. Chapter 7 Trustee Elections

In chapter 7 cases, the UST appoints an interim trustee promptly after the order for relief is entered. 11 U.S.C. § 701(a)(1). Normally, the interim trustee becomes the permanent trustee. Creditors may, however, elect a different trustee as the permanent trustee at the meeting of creditors held pursuant to § 341.

Section 702 and Bankruptcy Rule 2003 govern the election of a permanent trustee. Pursuant to § 702(a), a creditor is eligible to vote for a trustee only if the creditor: (1) holds an allowable, undisputed, fixed, liquidated and unsecured claim; (2) does not hold an interest materially adverse to

other eligible creditors; and (3) is not an insider. Under § 702(b), an election cannot be held unless creditors holding at least 20% of the eligible claims request an election. Therefore, if none of the requesting creditors are eligible to vote under § 702(a), then the election cannot be held. If an election is properly requested, a permanent trustee is elected if creditors holding at least 20% of the eligible claims actually vote and the candidate receives a majority of the votes. 11 U.S.C. § 702(c). If a trustee is not elected under this section, then the interim trustee serves as the trustee in the case. 11 U.S.C. § 702(d). In this case, the bankruptcy court determined neither of the requesting creditors were qualified to vote under § 702(a). Consequently, it never reached the questions of whether the 20% electing threshold of § 702(b) and the 20% voting threshold of § 702(c) were met, and those issues are not before us.

Section 702 is implemented by Bankruptcy Rule 2003. Bankruptcy Rule 2003 charges the UST with presiding over the election of a chapter 7 trustee at the § 341 meeting of creditors. Fed. R. Bankr. P. 2003(b), (d). If a party disputes the election, the UST must file a written report informing the bankruptcy court of the nature of the dispute, and the bankruptcy court resolves the dispute. Fed. R. Bankr. P. 2003(d)(2).

As noted above, there are a number of different methods for determining whether a particular creditor is part of the universe of creditors eligible to request an election and vote pursuant to § 702(a).[8] The bankruptcy court adopted the so-called expansive approach used by the court in *American Eagle*, calculating the universe of creditors based on the debtor's schedules, as modified by proofs of claim on file.[9]

---

**8.** *See* note 5.

**9.** Under the expansive approach, although a creditor listed in the schedules as unliquidat-

Riemer does not challenge the bankruptcy court's use of the *American Eagle* approach,[10] but contends the bankruptcy court erred by: (1) holding Riemer was ineligible to vote under § 702(a)(1) because its claims were unliquidated; (2) holding Santander was ineligible to vote under § 702(a)(2) because its interest was materially adverse to the interests of other unsecured creditors; and (3) considering objections regarding Riemer's and Santander's eligibility to vote that were not presented at or before the election.

## II. Riemer's Eligibility to Vote

 Pursuant to § 702(a), a creditor may not request an election or vote for a chapter 7 trustee if that creditor does not have "an allowable, undisputed, fixed, liquidated, unsecured claim." 11 U.S.C. § 702(a)(2). "A debt is liquidated within the meaning of [§ ·] 702 if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable by reference to (1). an agreement or (2) a simple formula." *In re Centennial Textiles, Inc.*, 209 B.R. 31, 34 (Bankr.S.D.N.Y. 1997) (citations omitted). The bankruptcy court ruled Riemer was not eligible to vote for a permanent ·trustee pursuant to § 702(a)(2) because its claims were unliquidated. The record supports the bankruptcy court's ruling.

Looking first to the Debtors' schedules, each of the Debtors scheduled Riemer as an unsecured creditor holding an unliquidated claim in an unknown amount. Neither Debtor scheduled the other as a co-debtor on its debt to Riemer. Thus, the

Debtors' schedules did not establish Riemer's claims were liquidated. Under the *American Eagle* approach, however, the court next looks to Riemer's proofs of claim to see if they established the fixed, liquidated amount of Riemer's claims.

Prior to the date of the creditors' meeting, Riemer filed identical proofs of claim in each of the Debtors' cases asserting unsecured claims in the amount of $240,755.41 for "legal services rendered prior to the petition date." Attached to each of Riemer's proofs of claim was an "invoice" in that amount dated just two days prior to the date the proofs of claim were filed, addressed to both Debtors, summarizing approximately thirteen various legal services rendered during an unspecified period of time, for a "TOTAL DUE" of $240,755.41, without any itemization or apportionment of that amount.

At the creditors' meeting on July 8, 2014, the UST's counsel asked Riemer if it was "asserting the full amount" of its proofs of claim in each of the Debtors' cases, and Riemer responded that $240,755.41 was the aggregate amount owed by both Debtors. Riemer did not know whether the firm's time entries allocated the legal services provided for each Debtor, and agreed the claim amount needed to be bifurcated and apportioned between each bankruptcy estate.

In the Election Report, the UST was unable to conclusively determine whether Riemer was eligible to vote under § 702(a), as Riemer filed an identical proof of claim in each case but "did not indicate on its

---

ed would not initially be included in the universe of creditors, if such creditor files a proof of claim asserting a liquidated claim before the § 341 meeting and no party in interest objects, the proof of claim supersedes the debtor's schedules and the creditor would be entitled to vote pursuant to § 702(a). *See In re Michelex*, 195 B.R. at 1008.

10. Riemer acknowledges the differing views but contends that the result would be the same under either the restrictive or expansive approaches. Nonetheless, Riemer applies the expansive view when presenting its argument.

proof of claim which of the Debtors for which it performed specific services," and as Riemer "agreed that it wasn't asserting the full amount of its claim against each of the Debtors, and that its claim should be bifurcated." Although the UST requested copies of invoices demonstrating what amounts Riemer was asserting against each Debtor, Riemer never provided these invoices, nor did it demonstrate how the aggregate amount should be divided. Without such documentation, such as itemized invoices, or a statement explaining the absence of such, neither proof of claim demonstrated a fixed or certain amount due to each Debtor. Thus, they did not evidence liquidated claims.

█ Riemer argues the only way to disqualify a creditor who has filed a proof of claim is for a party in interest to object to the claim, and because no party in interest objected to its claims as unliquidated, Riemer was entitled to vote. As set forth above, a creditor is entitled to vote for a chapter 7 trustee only if the creditor has filed a proof of claim *"evidencing a right to vote* pursuant to § 702(a)" and no objection is made to the claim. Fed. R. Bankr. P. 2003(b)(3) (emphasis added). Thus, even in the absence of an objection to the proof of claim, a creditor will not be entitled to vote if its proof of claim does not evidence an "allowable, undisputed, fixed, liquidated, unsecured claim." *See* 11 U.S.C. § 702(a)(1). Here, the bankruptcy court, relying on the dialogue between the UST and Riemer at the election, and Riemer's failure to produce any documentation apportioning the claim amount between the Debtors, determined the proofs of claim did not sufficiently demonstrate liquidated claims. The record supports that determination.

Based on the foregoing, we conclude the bankruptcy court did not err in determining Riemer was ineligible to request an election and vote for trustee pursuant to § 702(a)(1) as its claims were not liquidated.

### III. Santander's Eligibility to Vote

█ Pursuant to § 702(a)(2), a creditor may not request an election or vote for a chapter 7 trustee if that creditor holds "an interest materially adverse" to the interests of other unsecured creditors. 11 U.S.C. § 702(a)(2). Neither the Bankruptcy Code nor the Bankruptcy Rules defines what constitutes a materially adverse interest. However, "both the House Report and the Senate Report, which were submitted to Congress prior to the enactment of the Bankruptcy Code in 1978, indicate that the concept involves a balancing of competing factors that in essence encompass a conflict of interest rule." *In re Amherst Techs., LLC,* 335 B.R. 502, 508 (Bankr.D.N.H.2006) (citations omitted). One court summarized this concept as follows:

> The cases thus make clear that material adversity is measured by the effect on the creditor body as a whole, particularly by whether the challenged creditor's interest is such that it would tend to minimize distributions to the other creditors from the estate. Since merely opposing the claim of a single other creditor would not have the effect of minimizing distributions from the estate as a whole, it can fairly be concluded that such an interest does not qualify as materially adverse. Further, claims between creditors do not reduce the size of the estate and, therefore, also do not reduce the amount available for distribution to other creditors. Such claims are not materially adverse for purposes of § 702.

*In re Klein,* 119 B.R. 971, 974–975 (N.D.Ill.1990) (citation omitted), *appeal dismissed by,* 940 F.2d 1075 (7th Cir.1991).

"The determination of a materially adverse interest under § 702(a)(2) is made on a case-by-case basis, taking into account the competing factors." *In re Petters Co.*, 425 B.R. at 550 (citations omitted). "The comparison is between the nature, magnitude, and degree of the subject creditor's interest, and the interests of the general body of unsecured creditors." *Id.* "A creditor having the prospective ability to enhance its recovery at the estate's expense holds a materially adverse interest to the estate." [11] *In re Klein*, 119 B.R. at 983. "Ultimately, the concern is whether the subject creditor has ulterior motives for its participation in an election process, that may manifest themselves in unfairly self-serving ways if the subject's vote is pivotal in the choice of a trustee and could result in turn in a distortion or subversion of the administrative process post-election." *In re Petters Co.*, 425 B.R. at 550 (citation omitted).

 Santander filed identical proofs of claim in each of the Debtors' cases asserting secured claims in the amount of $385,023.30. Attached to both of Santander's proofs of claim were copies of promissory notes, which were undisputedly guaranteed by Mr. Sternburg, the sole officer, director and shareholder of the Debtors. On their schedules, both Debtors identified Mr. Sternburg as a co-debtor for their obligations to Santander.

In January 2014, A & E North filed an amended schedule to include "[a]mounts disbursed to Scott Sternb[u]rg as loans pursuant to books and records (between July 2002 and October 2013)" as an asset of the bankruptcy estate in the amount of $273,174.18. A & E South also filed an amended schedule to include "[a]mounts disbursed to Scott Sternburg as loans pursuant to books and records (between June 2002 and October 2013)" as an asset of the bankruptcy estate in the amount of $82,247.72. Thus, according to the schedules, Mr. Sternburg owed the Debtors $355,421.90. Substantially all of the Debtors' assets were sold during the chapter 11 phase of their bankruptcy cases, and, therefore, the only assets remaining to be liquidated for the benefit of the bankruptcy estates were the claims against Mr. Sternburg.

The bankruptcy court held that Santander was not qualified to request a trustee election or vote for the chapter 7 trustee under § 702(a) because its ability to pursue Mr. Sternburg on his guarantees rendered its interests materially adverse to those of the bankruptcy estates. In so ruling, the bankruptcy court determined that because the bankruptcy estates had claims against Mr. Sternburg, and Santander also had claims against Mr. Sternburg, Santander's interests were materially adverse to the interests of the bankruptcy estates, thus disqualifying it from participating in a trustee election under § 702(a)(2).

Riemer argues that the bankruptcy court's ruling is contrary to precedent, citing *In re Centennial Textiles, supra,* and *In re Poage,* 92 B.R. 659 (Bankr.N.D.Tex. 1988), for the proposition that a creditor is not materially adverse when it holds a guaranty from a non-debtor. Riemer's reliance on these two cases is misplaced. In

---

11. Most cases involving the issue of whether a creditor has a "materially adverse interest" for purposes of § 702(a) involve situations where a creditor may have received a preferential transfer from the debtor. *See, e.g., In re Amherst Techs., supra.* These courts have held a creditor's interest is materially adverse to the interests of the bankruptcy estate if it may have received a preferential transfer because the creditor's primary interest is to defend against the preference claim, whereas the bankruptcy estate's interest is to recover such a claim. *See id.*

*In re Centennial Textiles*, the bankruptcy court ruled that Heller Financial, one of the creditors requesting a trustee election, was disqualified from requesting the election and voting because it held secured cross-guarantees from the two jointly administered debtors. 209 B.R. at 35. The court disqualified Heller, however, because it concluded that Heller's "resort is not to non-debtors, but to separate debtors' estates being jointly administered," which "renders the claims in both cases unliquidated in both cases." *Id.* at 34–35. Thus, contrary to Riemer's characterization of the case, the *Centennial Textiles* court did not rule that a creditor holding a guaranty by a non-debtor was not materially adverse for purposes of § 702(a).

In *In re Poage*, the interim trustee argued the creditor requesting the election should be disqualified because its proof of claim did not waive any rights it might have against other parties and, therefore, its claim was unliquidated. 92 B.R. at 665. The court rejected this argument, stating "[t]he fact that [the creditor] may have recourse against [the debtor's husband] or other individuals does not make [the debtor]'s debt unliquidated since the promissory note provides that [the debtor] is jointly and severally liable for full payment." *Id. In re Poage* is clearly distinguishable from the present case because there was no contention the debtor held competing claims against the creditor's guarantors, or that the creditor had a materially adverse interest to other creditors.

We conclude that *In re Klein, supra,* is on point with the facts of this case. In *In re Klein,* the court held that a creditor who held a guaranty from a source from whom the bankruptcy estate also expected to recover was disqualified from requesting and voting in a trustee election because it had a material adverse interest. The court recognized "[a]t the time of the elec-

tion, a creditor having the prospective ability to enhance its recovery at the estate's expense holds a materially adverse interest." 119 B.R. at 975. The court reasoned the creditor had "[an] incentive to recover from the adversary defendants [in the debtor's bankruptcy case] directly rather than receive a diluted share of the adversary defendants' assets from the estate," and the creditor's "recovery from the adversary defendants draws directly from a source of funds insufficient to satisfy both [the creditor's] claims and the estate's claims," evidencing a materially adverse interest. *Id.* at 976–77. Ultimately, the district court concluded the creditor's adverse interest had been eliminated by its waiver of claims that would "detract from recovery by the estate." *Id.* at 977. Similarly, in this case, Santander had the prospective ability to enhance its recovery by pursuing Sternburg's personal guarantees, and, to the extent Sternburg could not satisfy both Santander's and the estates' claims, they would be competing for those funds. Thus, Santander's interests were materially adverse to those of the other unsecured creditors.

Riemer also argues that the bankruptcy court erred in finding that Santander held a materially adverse interest based on its personal guarantees from Sternburg because "no showing was made by the [ ] Trustee that Santander had taken any steps to enforce its guarant[ees] against Mr. Sternburg" and the absence of "least some evidence (and an articulated objection) that Santander, in fact, was competing against the estates," barred the objection from being considered by the court. Riemer offers no support for the heightened evidentiary standard it proposes, and we do not adopt it here.

Based on the foregoing, we conclude the bankruptcy court did not err in determining Santander was disqualified from voting

for a permanent trustee pursuant to § 702, on account of Santander's claims against Mr. Sternburg, which gave it a materially adverse interest.

## IV. Consideration of Arguments Raised Post–Election

 Finally, Riemer takes issue with the fact that although the Appellee, at the election, objected to Riemer's eligibility to vote for a permanent trustee based on an alleged personal relationship between Riemer and a principal of the Debtors, the bankruptcy court considered and ruled upon additional arguments raised by the Appellee in his objection to Riemer's motion for resolution of the disputed election. According to Riemer, the bankruptcy court should have limited its ruling on the creditors' eligibility to vote to the grounds asserted by the Appellee *at the election*, and its consideration of post-election arguments violated Riemer's rights to due process. In support, Riemer cites *In re Sforza*, 174 B.R. 656, 658 (Bankr.D.Mass.1994), and *In re Lake States Commodities*, 173 B.R. at 647, for the proposition that "post-election objections are late and should not be considered," and "to allow parties to object after the election would '[undermine] the rule and the election process.'"

 "There does not appear to be any authority regarding the formality with which an objection must be voiced in the § 702 context." *In re Sforza*, 174 B.R. at 658. Although it is clear that some objection must be raised at or before the election, the objection "does no more than preserve determination of the issue of eligibility for the Court by way of the United States Trustee's report of the disputed election and a motion timely filed, both as provided in Rule 2003(d)." *Id.* Once an objection is made at the time of the election, the UST is required to submit a report of disputed election and it is up to the bankruptcy court to determine whether the objection has merit. Moreover, the bankruptcy court is not limited to resolving a disputed election solely on the grounds asserted by the objecting party at the election. *See In re Centennial Textiles, supra.* In *Centennial Textiles*, the UST's report of the disputed election indicated both the debtors' counsel and the interim trustee had objected to the secured creditor's claim on the basis that a portion of the creditor's claim was disputed. 209 B.R. at 34. The court rejected the argument that the claim was disputed, but determined it was immaterial as the portion of the creditor's claim that was identified as disputed was the subject of an underlying adversary proceeding and, therefore, was unliquidated while the adversary proceeding was pending. *Id.*

Like the objecting parties in *Centennial Textiles*, the Appellee objected to Riemer's eligibility to vote on different grounds than those which formed the basis of the bankruptcy court's ruling. At the election, the Appellee objected to Riemer's eligibility to vote based on a materially adverse interest to other creditors. Once the Appellee objected to the election and specifically to the electing creditor's eligibility to vote, the issue was reserved for determination by the bankruptcy court. *In re Sforza*, 174 B.R. at 658.

Moreover, the UST clearly raised questions regarding the nature of Riemer's claims at the creditors' meeting and specifically requested additional documentation from Riemer demonstrating what amounts Riemer was asserting against each Debtor, and how the aggregate amount should be divided between the Debtors. Thus, Riemer cannot claim it did not have sufficient notice of the issues regarding its claims. *See In re Amherst Techs., LLC*, 335 B.R. at 511 ("Due process considerations do not necessitate any notice to a

creditor that another party may object to their voting for a trustee at a meeting of creditors. Due process does require that the disputed election be resolved by the bankruptcy court after notice and a hearing.").

Consequently, we conclude the bankruptcy court did not err in considering objections regarding Riemer's and Santander's eligibility to vote that were not presented at or before the election.

## CONCLUSION

Based on the foregoing, we conclude the bankruptcy court did not err in disqualifying Riemer and Santander from voting for a permanent trustee pursuant to § 702(a), and appointing the Appellee as the permanent trustee under § 702(d).[12] Thus, we **AFFIRM** the bankruptcy court's orders.

12. In light of this decision, we do not need to consider whether the bankruptcy court erred in denying Riemer's motion for reconsideration. In fact, Riemer did not specifically address that ruling in its brief, stating any argument as to the denial of reconsideration would be "duplicative" and if there was no error in the bankruptcy court's ruling, then the motion for reconsideration would be moot. Such is the case.